69 U.S. 320
 17 L.Ed. 817
 2 Wall. 320
 CASE
v.
BROWN.
 December Term, 1864
 
 AMONG the inventions of our country that have assumed great value—especially in the regions of the West, where Indian corn in largely produced—are those known as CORN-PLANTERS. The machine consists of a mechanism resembling somewhat, in external appearance, and in section view, a high plough on wheels. It is drawn by a horse, while a man walks behind and manages it. The object is to plant corn at spots, which spots shall be both equidistant and in rows.
 The corn to be planted is placed in a hopper or sort of box, which is fixed in the body of the machine; and, at proper intervals, as the machine is drawn by the horse, the grains are permitted to enter and fall through a valve, at the base of a short vertical spout, to the ground, another valve being at the top of the spout. If the grains were permitted to fall through the full length of the spout as the machine passed on, by a valve at the top only of the spout, they would not reach the ground exactly under the place at which the valve was opened; inasmuch as in the interval of time that the grain was descending through the spout, the machine would have passed over a certain space of ground in being drawn along by the horse. But, by employing two valves, one opening into the upper end of the spout from the hopper, and one at the bottom of the spout in close proximity with the ground, correct dropping is insured; the forward motion of the machine being compensated for by the double valves.
 A certain Jarvis Case had invented one of these corn-planters, and took a patent for it in January, 1845. In this patent he limited his claim to the particular combination of parts which constituted his machine. In November, 1858, he surrendered his patent and obtained a reissue with a more expanded claim. That claim was thus:
 'I claim, in combination with a corn-planting machine that is constantly moved over the ground, and drops the grain intermittently, the so combining of two slides, one of which is at or near the seed-hopper, and the other at or near the ground, or their equivalents, with a lever, as that the operator or attendant on the machine can open said slides at the proper time to deposit the seed and prepare a new charge by the double dropping herein specified.'
 The cut below shows in section the combination or arrangement.
 A is the hopper which carries the corn, B the seed-slide or valve leading from the hopper to the seed-tube E, C is the seed-cup in the seed-slide, D is the cut-off in the hopper, E is the seed-tube, F is the slide or valve to seed-tube, G is the hand lever by which the tubes are opened and closed in the plaintiff's machine, H the recoil-spring by which the slide-valves B and the valve F are simultaneously closed when the hand is removed from lever G.[1]
 In this machine of Case's a lever G, of a peculiar form, was used, which, by being pressed down, effected two operations, viz.: it carried the charge of grain out of the seed-box, and dropped it into the tube E, and it raised the slide F to let out the previously dropped charge. Thus the same operation that planted one charge put the next succeeding charge in close proximity to the ground, so that it had but a few inches to fall when the valve or slide F was opened.
 About the same time that Case originally invented his machine, a person named Brown invented one also, and got a patent in May, 1855. The parties were independent inventors. In its essential features, Brown's machine differed from Case's in not employing a lever having a weight or a spring or automatic device to return it to its position and close the valves, although the same final result, namely, the simultaneous double dropping of the seed was accomplished by one motion of the hand of the operator in both cases. The cut below will exhibit the combination and arrangement in this second invention.
 A here represents the hopper carrying the grain, B the slide-valve, and C the seed-cup between the hopper and the seed-tube E, and F the slide-valve which permits the seed to pass from the lower end of the seed-tube to the ground. G is the lever. When the upper end of this lever G is moved from the position shown in the drawing towards the hopper A, it is evident that the grain-cup C would be carried over and discharged into the tube E, and the same movement of the lever G would move the slide-valve F so as to permit the grain which it retained at its lower extremity to fall to the ground. Each movement of the lever, with this double seed-tube, whether forward or back, produced a 'drop.'
 Thus a similar double dropping of grain was accomplished in this machine of Brown as was accomplished in the machine of Case; but there was no spring or automatic recoil arrangement attached to the lever G, for restoring it to its former position, as it is on the plaintiff's machine. It required to be worked by hand in both directions.
 Case now sued Brown, in the Circuit Court of the Northern District of Illinois, for infringing his reissued patent. The action was case. On this trial his counsel requested the court to charge the jury——
 'That the plaintiff, in and by his patent, claims any mode of combining a valve in the seed-tube, and a valve in the seed-hopper, or their equivalents, with a lever, as that the operator may by one operation, or the application of one muscular force, carry a charge of corn from the seed-hopper into the seed-tube, and arrest it at the lower valve, and by the same operation or muscular force, let out from the lower valve and drop into the furrow a charge of corn, previously dropped and lying at the lower valve.
 'That the plaintiff by his patent is not confined to the peculiar means of returning the seed-slide which he has adopted in his said model. That his claim covers any arrangement to operate the valves and lever which will produce the result, although he may not in the other machine employ the rock shaft and weighted lever, or any automatic element. He may employ some substitute for the automatic element, so that he by one operation, or the application of a single muscular force applied to the lever, drops from the lower valve, and supplies a new charge to take its place, by the same operation or muscular force so as aforesaid applied to the lever, combined with the valve at the seed-tube and the valve at the seed-hopper, or their equivalents.'As bearing on the interpretation asked for by defendant and adopted by the court below, it is to be noted, that on the question of the prior state of the art to the plaintiff's invention, the defendant proved at the trial that a seed-planting machine had been invented and used to a limited extent, and a description thereof filed in the patent office, as early as 1852, by one Charles Finn, in which was combined the two slides and lever, for accomplishing the same final result as in the plaintiff's machine. A sectional drawing of Finn's machine is given below, in which the corresponding letters are used as in the other two plates.
 A, being the hopper, B the slide-valve, C the seed-cup, E the seed-tube, F the slide-valve, and G the lever,—this arrangement agreed with the plaintiff's arrangement in nearly every respect in which the defendant's machine did, and differed from the plaintiff's in having no automatic recoil attachment to the lever, such as a weight or spring.
 The court below refused to charge as requested by the plaintiff, but charged in substance that the thing patented to him, was a technical combination consisting of certain elements, and that to constitute an infringement, all these elements must be used by the defendant; that among these, is that particular kind of lever G, described by the patentee, which is so combined with a weight or spring, that when the valve has been opened by the hand of the operator moving the lever in one direction, the weight, acting through the lever and moving it in the reverse direction, causes the valves to close; and that unless the defendant's machine employs a lever having the same mode of operation, that is to say, the peculiar arrangement described by the patentee for moving it in the reverse direction, or some other arrangement which is a mere mechanical equivalent therefor, the patent is not infringed.
 The language of the court as quoted exactly was this:
 'In order to constitute an infringement, the whole combination must be used, because he claims not the various parts, but the whole combination together. The plaintiff cannot claim what is called double dropping of corn,—that is a result or an effect. He can only claim the double dropping by the particular mode which he has devised. Any one can produce the same results by other and different modes, and still not violate the claim of the plaintiff. In order to constitute a violation, there must be a use of the same methods substantially as those adopted by plaintiff. A mere change of form, for example, in the lever and its mode of operation, the adoption of some equivalent suggested by mere mechanical skill, would not prevent it from being an infringement; otherwise, if the change were one of substance and requiring the exercise of inventive power.'
 Thus the charge made the case turn on the question, whether the defendant employed in his machine, as one element of his combination, a lever having the same mode of operation as that of the plaintiff, to wit, having two motions in opposite directions at every dropping, one produced by the hand of the operator to open the valves, and the other by an automatic arrangement to close them.
 Of course, the charge was in opposition to the plaintiff's request; and the jury having found a verdict for the defendant, the case was brought by writ of error to this court.
 Mr. Roberts, for Case, the plaintiff in error: The court erred in its charge by withdrawing the question of fact from the jury, whether the machine of the defendant did not so combine the valve and lever as to produce the result substantially produced by the plaintiff's; as it manifestly did in limiting them to the inquiry, whether defendant employed a lever with such arrangements as required two motions to plant each hill of corn.
 The error was in construing the claim to be for a technical combination, and resolving the device into its rudimental parts, and inquiring whether the defendant used all of these parts, and whether each part had a mode of operation substantially the same in the two machines. That this was an error, numerous cases show.[2]
 Mr. Goodwin, contra, for Brown: It is the duty of the court to construe the patent on the maxim 'ut magis res valeat quam pereat,' and therefore in the course of a nisi prius trial, the judge will apply to such construction the state of the art, the surrounding circumstances in which the inventor is placed, and the previous existence of some things mentioned or referred to in the patent, as developed on the evidence.[3]
 In order to distinguish the plaintiff's invention from that of Finn, the judge was obliged to limit the claim as he did, and in order to constitute a violation of the plaintiff's patent thus construed by the court, it was necessary that a party should use the whole combination, that is to say, the tubevalves and lever combined substantially in the same way as the plaintiff had combined them, and if any one of the elements necessary to constitute the entire combination were left out, then there was no infringement, leaving the question as to the identity of the plaintiff's and defendant's machines fairly to the jury.[4]
 Under a new disguise, is not the question here raised exactly the same as that involved in Burr v. Duryee, decided by this court but a year ago?[5] If this is so, it would be indecorous to discuss it. No case in the law of patents was ever more ably discussed than that; the united sciences of jurisprudence and mechanics having been brought as sister lights, with memorable ability, to bear upon the matter in issue. The court will remember the very able arguments of all the gentlemen; that one especially, as found in the report of the case, which we now beg to refer to, of Mr. George Harding, of Philadelphia, who, for the sake of juridical science in its application to the useful arts of the country, was allowed almost to convert these precincts of the Law into an Institute of Science. The case was not less ably expounded from the bench in giving judgment in the case. Overruling nothing, perhaps, the opinion there given did not the less dissipate a 'bank of fog,' which the learned justice who gave it remarked, 'that the subtle ingenuity with which its principles were sometimes presented' had involved the law of patents, and in which my learned brother of the other side would now cover it again.
 Mr. Justice GRIER delivered the opinion of the court.
 
 
 1
 The error alleged is the refusal of the court to give certain instructions, the substance of which, when extricated from the mass of verbiage with which it is encumbered, seems to be, 'that the plaintiff had a right to claim any mode of combining' the various mechanical devices, in the improved machine, which would produce the same effect or result, as mere equivalents for those described in his patent. The court refused to give this instruction to the jury; but, on the contrary, instructed them in the language quoted in the reporter's statement.[6] The instruction there quoted is a correct exposition of the law, and if it produced a verdict in favor of defendant, the plaintiff had no right to complain.
 
 
 2
 The plaintiff's original patent limited his claim, very properly, to the particular devices and combination of parts which constituted his improved machine. But as this claim was not broad enough to cover the improvement described in defendant's patent, the plaintiff surrendered his, and had it reissued with a more expanded claim. It is for the infringement of this reissued patent that the action is brought.
 
 
 3
 We have had occasion to remark, in a late case,[7] on this new art of expanding patents for machines into patents for 'a mode of operation,' a function, a principle, an effect or result, so that by an equivocal use of the term 'equivalent,' a patentee of an improved machine may suppress all further improvements. It is not necessary again to expose the fallacy of the arguments by which these attempts are sought to be supported, though we cannot hinder their repetition.
 
 
 4
 LET THE JUDGMENT BE AFFIRMED.
 
 
 
 [1]
 This recoil-spring, H, relieved the operator from replacing or pushing back the lever with his extended arm; a matter which, when to be performed many hundred times a day, makes a large demand on muscular strength. With the recoil-spring, one muscular effort did the work of two.
 
 
 [2]
 Carver v. Braintree Manufacturing Co., 2 Story, 432; Winans v. Denmead, 15 Howard, 330; Wilbur v. Beecher, 2 Blatchford, 132; Foster v. Moore, 1 Curtis, 279.
 
 
 [3]
 Winans v. Denmead, 15 Howard, 338; Brooks v. Fiske, Id. 215; Hogg v. Emerson, 6 Id. 437; Neilson v. Harford, Webster's Patent Cases, 350, 370; Morris v. Barret, per Leavitt, J., Ohio, 1858; Whipple v. Middlesex Co., Sprague, J., Massachusetts, 1859; Ames v. Howard, 1 Sumner, 485; Buck v. Hermance, 1 Blatchford, 401.
 
 
 [4]
 Eames v. Godfrey, 1 Wallace, 78; Turrill v. Railroad Co., Id., 491.
 
 
 [5]
 1 Wallace, 531.
 
 
 [6]
 Supra, p. 325.
 
 
 [7]
 Burr v. Duryee, 1 Wallace, 535; see, also, McCormac v. Talcott, 20 Howard, 405.