CORTIS v. AMERICAN STREET LAMP & SUPPLY CO. et al.

(Circuit Court, S. D. New York. March 2, 1906.)

1. PATENTS—INFRINGEMENT—LAMP.

The Cortis patent, No. 613,648, for a lamp, the essential element of the combination shown being a spring support or cushion for carrying the chimney-gallery and mantle-support in lamps using an incandescing mantle, to prevent injury to the mantle from jars or shocks, is not infringed by the mantle supporting device of the Momand patent, No. 781,613.

2. SAME—LAMP CHIMNEY.

The Marsh patent, No. 652,730, for a lamp chimney, claims 1, 2, and 3, the essential element of which is an adjustable support for the upper portion of a sectional chimney for use on lamps having an incandescing mantle, must be limited to the precise construction shown in view of the prior art, and, as so limited, are not infringed by the chimneys shown in the Momand patent, No. 791,355.

In Equity. On final hearing.

Seabury C. Mastick (Charles S. Jones, of counsel), for complainant.
W. P. Preble, Jr., for defendants.

HAZEL, District Judge. The patents in suit, No. 613,648 dated November 1, 1898, granted to Frank A. Cortis as inventor, and No. 652,730, dated June 26, 1900 to Riverius Marsh, assignor to Dwight T. Cortis, relate to new and useful improvements in lamps and lamp chimneys. The structures described in the specifications are subject to conjoint use in an illuminating gas lamp which has an incandescing mantle of the Welsbach type. The object of the earlier patent, which will be considered first, was to prevent disintegration or destruction of the mantle (which is composed of a delicately woven fabric) from jars or shocks. The specification says:

"The object of my invention is to provide means whereby the mantle-supporting portion of the lamp may be insulated from shocks and jars; and to this end it consists in the combination, with the lamp-support, of a yielding cushion interposed between the lamp-support and the mantle-support, and in details of the several parts making up the device as a whole, and in the combination of such parts, as more particularly hereinafter described, and pointed out in the claims."

The claims 1, 7, and 8, which the defendants are charged with infringing, read as follows:

"(1) The combination of an incandescent gas-burner, of a spring-support constructed to carry the mantle and prevent undue vibration and shaking thereof, with a telescopic tubular connection for supplying gas without interfering with the action of the spring-support."

"(7) In combination with a bracket or like support for a lamp having a fragile mantle over the flame, a tubular connection between the support and the burner of said lamp, a mantle-support, and a yielding cushion interposed between the lamp-support and the mantle-support."

"(8) In combination in an incandescent burner, of a spring-support constructed to support a mantle and prevent undue vibration or shaking thereof, with a tubular connection for supplying fluid without interfering with the action of the spring-support."

The essential element of the combination, evidently, is the spring-support or yielding cushion. In the first claim, the spring-support is

mentioned as carrying the mantle so as to prevent destruction by undue vibration and shaking; in claim 7 the spring-support is described as a yielding cushion interposed between the lamp-support and the mantle-support, while claim 8 defines a spring-support constructed to support a mantle, and to thereby prevent undue vibration and shaking thereof. That portion of the lamp which rests upon the gallery or ledge gently reciprocates by force of the elasticity of the spring or yielding cushion when the lamp is shaken and thereby the incandescent mantle is prevented from breaking or disintegrating. If the mantle and that portion of the lamp which supports it rested rigidly upon the gallery or ledge, it would not be difficult to understand that any oscillating or vibratory motion might destroy the mantle and perhaps the globe. The principal defense is noninfringement. The defendant contends that the patentee brought into the art a device which affords protection from jars and shocks to the chimney gallery and chimney together with the mantle-support and the mantle, and that the essential element of the above claims is the coiled spring, which is illustrated in the drawings attached to the specifications. This claim is supported by the proofs; for to accomplish the object of the inventor, it was necessary to provide means "whereby the mantle supporting portion of the lamp may be insulated from shocks and jars." The specification says:

"Prior to my invention the chimney gallery, f [which supports the chimney, g, a mantle, h, and, in most instances, a shade], has been supported directly on top of the air-shutter, the mixing or central tube, c, extending through a central opening in the chimney-gallery, as shown in dotted line in Fig. 1, which gallery is thus supported firmly in an upright position. When the parts are so supported, any jar given to the gas-bracket or other support for the lamp or the lamp itself is communicated directly to the chimney-gallery and mantle-support and causes the mantle to break short off at the neck or upper portion, and thus become destroyed. In order to avoid this, a spring-cushion or like elastic device, e, is interposed between the mantle-support [in this instance the chimney-gallery] and the bracket or part fast to the bracket."

Continuing, the specification says:

"The mantle, h, is supported usually from a loop formed on the upper end of a rod, h1, which rod is secured in a socket, h2, in the chimney-gallery as by means of a clamp-screw, the head of which is shown at h3."

It will be observed that the entire weight of the gallery and chimney is borne by the elastic cushion. From a careful reading of the specification in connection with the drawings it is clear that the patentee does not claim a spring-support that carries the mantle, as the mantle is supported from a loop formed on the upper end of a slender bar or rod which is secured to the chimney-gallery. Claims 1 and 8 do not limit the location of the spring-support, but I think that to include a yielding support for the mantle alone would be an expansion of such claims. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344. The feature of threading the loop to suspend the mantle over the flame was a known arrangement at the date of the patent in suit. In the patent to Bell, No. 409,554 of August 20, 1889, is shown a method of suspending the mantle by a platinum wire from the hori-

zontal ring at the top end of a rod vertically adjusted to the side of the burner. The prior art as evidenced by prior patents, does not disclose the spring or cushion arrangement of the Cortis patent. The Svenson patent, No. 321,657, for an oil lamp, has a coiled spring located in the base of the lamp to press down the front to enable convenient and expeditious filling. This device has little bearing upon the patent in suit. The Nichol patent, No. 555,732, issued March 3, 1896, is perhaps suggestive of the Cortis structure. The patent related to a gas-burner using an incandescent gas-mantle, and the object was to overcome vibration or jars. The mantle was supported by two spiral springs which were suspended from a fixture which was independent of the gas bracket. It is thought that the Nichol device would be close enough to suggest the Cortis coiled spring or yielding cushion, but the proofs show that the invention in suit was conceived and completed· in the latter part of the year 1889, before the Nichol application was filed. That the Cortis device in question was in prior public use within the purview of the statute, or that it was abandoned, is not claimed. The validity of the patent in suit and the time when the invention was made is not seriously questioned. The scope of the claims in controversy, however, is not thought to encompass the structure of the defendants. The defendants' gas-mantle is hung upon a platinum wire attached to the upper portion of a curved or bended steel wire. Such curved wire is a so-called double wire support for the incandescent mantle and was designed, according to patent, No. 781,613, dated January 31, 1905, issued to Momand, to prevent any part of the mantle-support from "lying within the central zone of heat from the burner." In short, the peculiar curvature of the wire enables keeping the suspended mantle directly above the burner. Complainant contends that the upper portion of the wire is curved in such a manner as to impart to it a resiliency which results in securing the advantages of the patent in suit. I am not convinced of the soundness of this proposition. There is no such spring action in the curvature of the rod used by the defendants as was designed to prevent destruction of the mantle by vibratory shocks or jars. Concededly, a slender metal rod even without the double wire support is yielding to a slight extent. The steel rods of the defendants' device, together with a slight degree of resiliency due to the manner in which the platinum wire is fastened thereto, in connection with Welsbach burners from which the mantle is suspended, concededly were old at the date of the Cortis invention. Defendants claim that their rods are curved or doubled to preserve the ring at the upper part and particularly to remove the necessity of soldering one of the vertical bars to the ring. The defendants have simply altered the form of a supporting rod and have not thereby primarily afforded elasticity to the lamp-support or other devices of the patent in suit. It is quite true that infringement cannot be avoided by omitting one element of a combination of the claims and substituting therefor equivalent means to perform the same function, but as already intimated, the principle of defendants' steel wire device performs its function in a different manner and in such a way as not to include the essential element of the Cortis patent in.

suit.   In Eames v. Godfrey, 1 Wall. 78, 17 L. Ed. 547, the Supreme Court substantially held that even if a defendant should use the other elements of the combination, though not the identical mechanism, and his structure performed the same function, the patent would not be infringed.   The court says:

"The patent in controversy was for a combination of mechanical powers to effect a useful result, and such a patent differs essentially in its principles from one where the subject-matter is new.   The law is well settled by repeated adjudications in this court and the circuit courts of the United States, that there is no infringement of a patent which claims mechanical powers in combination unless all the parts have been substantially used.   The use of a part less than the whole is no infringement."

See, also, Case v. Brown, 2 Wall. 320, 17 L. Ed. 817; Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650, 660, 661.

I do not wish to be understood as holding that a complainant because his patent is for a combination cannot invoke the doctrine of equivalents, as the rule of equivalents is applicable to combination claims as well as to cases where a patentee is the inventor of an entire structure; but the scope of combination claims is subject to a narrower view.   Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33.   In my judgment, the defendants' structure is not within the scope of the claims under consideration.   As to patent No. 652,730.   The essential element of the involved claims is the upper section of a chimney or flue which is adjustably supported in relation to an incandescent mantle. In complainant's brief, the construction of the Marsh chimney is correctly explained as follows:

"The upper section is supported on a rod, $a^2$, capable of vertical adjustment so as to maintain the chimney above the mantle or to lower it so as to completely inclose the mantle.   The lower section, D, is in the form of a frustrum of a cone and rests upon the perforated shell or gallery, $b^2$.   By this construction the patentee explains that separate currents of air are induced, one within and the other outside of the cone, D.   The inner current of air passes around the mantle and with the products of combustion escapes through the upper section A, of the chimney.   The outer current of air prevents 'the intense heat of the mantle from unduly heating and breaking the glass globe.' "

The device is exclusively adapted to the Welsbach incandescent mantle, and the advantage to be derived from the patent is explained in complainant's brief as follows:

"The feature of adjustability of the upper section of the chimney permits it to be raised or lowered relatively to the mantle so as to regulate the draft, or so as to rest upon the cone, D, to completely enclose the mantle thus protecting the mantle from draughts liable to disintegrate it when not in use, or when the inside of the globe is to be cleaned."

The defenses interposed by the answer are anticipation and non-infringement.   The claims in controversy read:

"(1) In a gas-lamp, the combination of a gas-burner, an incandescing mantle of refractory material above the burner, an outer removable glass globe, a vertically-adjustable tubular chimney adapted to be raised above or moved down over the mantle to inclose it, means for adjusting the said tubular chimney from the outside of the globe, whereby the chimney may be adjusted without removing the globe.

"(2) In a gas-burner, the combination of the main burner. a refractory mantle supported above the burner, an adjustable chimney adapted to be vertically adjustable to expose or completely inclose the refactory mantle, a glass globe inclosing the chimney, mantle and burner and means to support the chimney in its adjusted position.

"(3) In a gas-burner, 'the combination of the main burner, a refactory mantle supported above the burner, an adjustable chimney adapted to be vertically adjustable to expose or completely inclose the refractory mantle. means to support the chimney in its adjusted position, and a conical shield encircling the base of the refractory mantle or burner and over which the vertically-adjustable chimney fits."

Complainant claims that Marsh was the first to provide a chimney which could be lowered to fit over mantles of various sizes to the end that a desired draught might be created. The claims, though the language is broad, must be restricted, however, on account of the prior state of the art, to the precise construction shown. In the patent of Fischer, No. 308,762, dated December 2, 1884, is shown a combination of elements, one of which is a vertically-adjustable lamp chimney. The chimney which may be raised or lowered is arranged in telescopic fashion; that is, the construction consists of two tubes, the outer tube having a slanting slot and a set screw which is used to fasten the inner tube. The fact that the patent relates to an oil lamp is not thought material. It certainly was old at the date of the invention to provide lamps with tubular flues which were adjustable substantially in the same manner as in the Marsh structure. See patents to Fish, No. 127,685, issued June 11, 1872, for street lamps; Hagerty, No. 142,693, issued September 9, 1873; Miller, No. 307,406, of October 28, 1884; Pfingst, No. 347,375, of August 17, 1886. It is true that the chimney arrangement of the Fischer patent was to provide means to fit the lamp to cars and to enable convenient removal of the globe. Such arrangement of the chimney, however, is not far removed from the alteration made in the structure in suit. That the Marsh conception by which the tubular chimney is lowered over the mantle, and down upon the cone of the chimney gallery was a patentable improvement is not seriously controverted. The principal question is whether or not the scope of the involved claims in view of the prior art entitles the patentee to a construction of such breadth as will include a telescopic arrangement for sliding the chimney. Probably, some credit is due the inventor for having slightly improved the art, but his conception was not that of a pioneer, and accordingly he is entitled only to protection for the means by which he achieved the result. Complainant's structure has a three-part chimney—an upper and lower section, the inner part and the outer part being in concentric position, the lower section resting upon a so-called perforated shell at the lower end of the mantle. To lower the upper portion of the chimney the rod is operated in the manner as stated in the patent. The defendants' chimney and the manner of its operation is described in the specification of patent No. 791,355, issued to Momand, as follows:

"A flue, as J, is slidably fitted within the member, H, and is provided with a radial stud or pin, j. adapted to enter the slot, h, an do lie within any one of the 'sockets, h⁴, to support the flue thereby at a predetermined height above

the mantle, I. The vertical position of said flue is to be determined according to the air-draft conditions of the lamp, and, as is obvious, will be regulated by adjusting the flue so that its stud or pin, j, rests in a suitable socket, h⁴. When desired to remove the flue from its sheath, the pin or stud, j, is disengaged from the slot, h³, and is moved downwardly through a channel, h⁵."

The defendants' chimney is adjusted similarly to the method described in the Fischer patent. The tubes are telescopic in form, and are adjusted at variable heights by a pin and rack arrangement. According to the proofs, the patentee did not design his invention to lower the inner tube so as to enclose the mantle and protect it from draughts. It has been held that when a defendant makes and uses a device according to the specification of a patent held by him, the presumption of patentability between him and a prior patentee is balanced. Hence, the Momand patent, describing the structure of the defendants, granted subsequently to the Marsh patent in suit, is some evidence tending to show that in the estimation of the Patent Office there was a patentable difference between the two lamp chimneys and the features by which they were lowered over the mantle. Boyden Power-Brake Co. v. Westinghouse Air-Brake Co., 70 Fed. 816, 17 C. C. A. 430; Bates v. Keith (C. C.) 82 Fed. 100. I have not considered the patent to Prendergast & Slinack, which defendants claim anticipates the patent in suit. The question, therefore, of whether the interference proceedings and the decision of the Patent Office declaring that Marsh was the prior inventor were binding upon the defendants who were not parties to the interference proceeding, need not be decided. Enough has been said to indicate that the combination claims 1, 2, and 3 are only entitled to a narrow construction. Such being the fact, the defendants' chimney is thought not within their scope.

The bill charging the defendants with infringement of patents No. 613,648 and No. 652,730, is not sustained, and, accordingly, is dismissed with costs.