DEBNAM et al. v. BENTHALL MACH. CO., Inc.*

(Circuit Court of Appeals, Fourth Circuit. November 23, 1916.)

No. 1411.

1. PATENTS ⬗328—VALIDITY—PEANUT PICKING MACHINE.
   The Ferguson & Benthall patent, No. 808,442, for a peanut picking machine, held void for lack of invention in view of the prior art, and also for prior public use of the Ben Hicks machine for more than two years; also held not infringed, conceding its validity.

2. PATENTS ⬗238—INFRINGEMENT—OMISSION OF PARTS.
   A machine which omits one of the elements of the combination in a patented machine without the substitution of a mechanical equivalent does not infringe the patent.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §.376.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in equity by the Benthall Machine Company, Incorporated, against Thomas H. Debnam and Walter C. Ferguson, otherwise known as the Ferguson Manufacturing Company. Decree for complainant, and defendants appeal. Reversed.

For opinion below, see 222 Fed. 918.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied February 28, 1917.

Menalcus Lankford, of Norfolk, Va., Lee Britt, of Suffolk, Va., and Harry K. Wolcott, of Norfolk, Va. (Wolcott, Wolcott, Lankford & Kear, of Norfolk, Va., on the brief), for appellants.

T. Hart Anderson, of New York City (Munn & Munn, of New York City, and Tazewell Taylor, of Norfolk, Va., on the brief) for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The appellee will be referred to as complainant, and·the appellants as defendants, such being the respective positions occupied by the parties in the court below.

The complainant, the Benthall Machine Company, a corporation doing business in the city of Suffolk, Va., instituted suit in the District Court of the United States for the Eastern District of Virginia against the Ferguson Manufacturing Company. The bill alleges infringement of certain claims of its peanut picking and stemming patent combined in a machine known as the Benthall machine. The court below in its decree perpetually enjoined the defendants from "using or selling any peanut picking and stemming machines embodying the inventions of said letters patent No. 808,442, as to claims 2, 4, and 5, and No. 890,401, as to claims 1 and 3, or either of them, or from in any way disposing of any such machines containing said infringing constructions which they may now have on hand to others." The case comes here on appeal under section 129 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1134 [Comp. St. 1913, § 1121]).

Inasmuch as this court has already disposed of the questions raised in this·controversy as respects claims 1 and 3 of patent No. 890,401 at this term of the court in the case of Virginia-Carolina Peanut Picker Company, Incorporated, v. Benthall Machine Company, Incorporated, 241 Fed. 89, —— C. C. A. ——, adversely to the contention of complainant, we do not deem it necessary to enter into a discussion of the same further than to say that for the reasons stated in that case we think the court below was in error. Having discussed the claims of the respective parties at great length in the case relating to these patents decided at this term, we fear that in the discussion of questions involved in this case we may subject ourselves to the charge of repetition. However, we hope to avoid this as much as possible.

[1] It is insisted that Ferguson and Benthall are not pioneers in the use of—

"a picking screen, a conveyor moving over the picking screen, and a retarding device above the picking screen to pick peanuts."

It is further insisted that a similar device is shown in what is known as the Crocker patent, No. 97,364. This machine is described by the inventor in the following language:

"The object of this invention is to provide a simple and efficient machine for separating peanuts from the vines; also to separate them from the chaff, light and faulty peas, and to rub and scour the shells."

This patent was granted on the 30th day of November, 1869. The witness Foster analyzes claim 2 of the Ferguson-Benthall patent, and makes a comparison as follows:

| Ferguson-Benthall Patent, 808,442. Claim 2. | Crocker Patent, 97,364. |
|---|---|
| 1. A stirring device consisting of a frame bearing downwardly projecting fingers. | 1. A thinning and distributing frame, E. |
| 2. A subjacent picking screen. | 2. A subjacent carrier, C. |
| | 3. A subjacent picking screen, H, |
| 4. Means for imparting a lateral motion to the stirring device. | 4. (The distributing frame, E, is stationary.) |

A careful consideration of these claims leads us to the conclusion that there is only one distinction between these two patents, to wit, the Ferguson-Benthall patent is so constructed as to impart a lateral motion to the stirring device, while, on the other hand, in the construction of the Crocker patent there is used a stationary distributing frame, the function of each being precisely the same.

It appears from the evidence that agitators used for the purpose of stirring and shifting grain and other material were common in the prior art many years anterior to the date of the issuance of the Ferguson-Benthall patent, and it is equally true that agitators were used in patent peanut picking machines for separating the vines many years before the patent in suit was granted.

Our attention has been called to what is known as the Filbrun patent, No. 8,653, which shows a plurality of springed fingers for spreading chaff and grain over the sieve of a fanning mill. Indeed, this comes within the knowledge of every one who has had experience on the farm. In describing his patent Filbrun states:

"When the machine is in operation, the shoe is moved horizontally and laterally with a rapid motion. * * * This motion is communicated to all the fingers alike and the fingers being in a horizontal position over the riddle to remove the grain and chaff from the shoe. The whole is spread over the riddle equally, instead of being removed in bunches as is the case of fanning mills without this attachment."

It further appears that the Crocker patent, No. 502,619, as shown in the evidence offered by defendant, is a peanut picking machine containing a movable agitator equipped with downwardly projecting fingers to be used in stirring up the vines so as to cause the peanuts to drop through the grating. The patentee in describing this machine says:

"In operation the rake bars are advanced along over the grating while in lowered position and drawn back when in elevated position, the result being to move the vines out toward the rear, which movement is somewhat facilitated by arranging the upper bars of the grating longitudinally, as before described. To further facilitate the moving of the vines, and also to assist in stirring the same up to effectually guard against any loose peanuts being carried out by the vines, the teeth are curved toward the rear as shown."

A careful reading of this claim inevitably leads one to the conclusion that its function is precisely the same as that of the Ferguson-Benthall machine.

Our attention is also called to another peanut picking machine where a stirring device is based upon the same principle as the Ferguson-Benthall machine. This is known as the Carnochan patent, No. 717,345. The witness Foster has compared this patent with that of Ferguson-Benthall as follows:

| Ferguson-Benthall Patent, 808,442. Claim 2. | Carnochan Patent, 717,345. |
| --- | --- |
| 1. A stirring device consisting of a frame bearing downwardly projecting fingers. | 1. A stirring device, R, comprising a rotary member having slats, R. |
| 2. A subjacent carrier. | 2. A subjacent carrier, O. |
| 3. A subjacent picking screen. | 3. A subjacent picking screen, N. |
| 4. Means for imparting a lateral motion to the stirring device. | 4. Means for imparting a rotary motion to the stirring device (the belt, S). |

The method employed for operating the Carnochan patent is described as follows:

"As the vines are dragged over the screen by the conveyor the peas or beans drop through the perforations of the same, while the vines and pods are discharged over the tail end thereof. In order to cause any detached peas or beans which may lodge in the vines to be shaken out of the same and discharged through the screen, an agitating mechanism is provided which preferably consists of a number of rotary tedders, agitators or stirrers, R, arranged transversely over the separating screen one in front of another. * * * The tedders are turned so that their lower portions move in a direction opposite to that of the conveyor. This causes the slats of the tedders to lift and toss the vines, shaking the detached peas out of the vines and upon the screen."

A comparison of these two machines shows that the only distinction between the Ferguson-Benthall patent and the Carnochan patent is that the Carnochan patent has a rotary agitator, while the Ferguson-Benthall patent contains a lateral movable stirring device with downwardly pointing fingers. It was evidently intended in the construction of each of these machines to provide for the separation of the vines. This was the sole purpose in view, and the object sought to be accomplished undoubtedly emanated in the brain of Carnochan, and any attempt on the part of the Ferguson-Benthall patent to accomplish this purpose in another way involves mechanical skill, and that alone.

The construction of the defendants' machine in this instance is wholly different from the Benthall patent. The picking frame consists of a rotary drum over which a wire with diamond-shaped meshes is stretched. There is a stationary frame with downward projecting fingers comprising two-thirds of the frame; its function being to tear and separate the vines. The remaining one-third oscillates laterally across the machine. There is also a Y-shaped frame suspended in the center of the drum, and at each end of the same, with a weight attached to the bottom of the Y, and the two arms of each Y, to which is attached rods, extending up until they almost touch the wire picking frame. As the frame revolves, if any vine, stick, or obstruction comes through, it is struck by this rod and bent back into the wire mesh; the weight at the bottom of the Y serving to increase the tension until it

is cut off. The complainant insists that this Y-shaped stripper infringes their brush, and also the lateral movement of the picking frame.

The witness Foster, among other things, made the following analysis of claims 4 and 5:

(1) A carrier for the vines.

(2) A picking screen arranged below the carrier through which nuts may drop while still adhering to the vines.

(3) A movable brush below the screen to clean the same.

Claim 5:

(1) A carrier for the vines.

(2) A picking screen arranged below the carrier.

(3) A movable cleaner below the screen.

(4) A stirring device arranged above the carrier to work the nuts through the screen.

It should be borne in mind that claim 4 of the Ferguson-Benthall patent contemplates that the screen is to be cleaned below by a movable brush. In referring to this phase of the question the witness Brandenburg said:

"Q. The brushes are shown in Fig. 3 of the Ferguson & Benthall patent as being in direct contact with the picker screen, are they not? A. Apparently so; yes. Q. From your previous answer I therefore take it that the movement of the brush disclosed in the Ferguson and Benthall patent is opposite to the direction of the movement of the vines relative to the picking screen, thereby releasing from the meshes of the picking screen such vines and trash as might be caught therein. Am I correct in this understanding? A. Yes."

[2] Is there any relation between the brush and the wooden stripper of the Ferguson-Benthall Manufacturing Company's machine? In determining as to whether there has been an infringement this question becomes very important. The latter machine, as we have stated, has a wooden stripper, but no movement when in contact with an obstruction. Its function is to move in the same direction the vines are going or passing, which results in pressing obstructions in the angle of the diamond-shaped wire mesh, thereby cutting or tearing the obstructions off instead of brushing them into the wire mesh, while the purpose of the brush would be to remove it from the mesh. Indeed, this is the principal function of the brush in the Ferguson-Benthall patent, but it is not to be found in the machine of defendant. There is an element in an old combination which is not employed by the complainant; one essential element having been omitted from the combination. Under these circumstances there is no infringement of the same by the defendant.

In the case of Vance v. Campbell, 66 U. S. (1 Black) 427, 17 L. Ed. 168, the court in referring to this point said:

"This provision [section 9, c. 45, Acts 1837] cannot be applied to the present case; for, unless the combination is maintained, the whole of the invention fails."

Also in the case of Wicke v. Ostrum, 103 U. S. 461, 26 L. Ed. 409, the court said:

"A combination of * * * elements, not the equivalents of his, would be a different machine, and consequently not an infringement. * * * By his patent he appropriated to himself only so much of the field of invention

which his idea embraced as * * * the machine described in his specification and claimed in his application."

The Supreme Court of the United States in the cases of Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601, and Case v. Brown, 69 U. S. (2 Wall.) 320, 17 L. Ed. 817, announced the same rule.

It appearing as it does that the brush is intended to accomplish a different result from that of the wooden stripper of the Ferguson-Benthall machine, and that defendant has not used such instrumentality, we are impelled to the conclusion that there has been no infringement.

It is contended by defendant that the prior use of the Ben Hicks machine, constructed in 1901 and used successfully until 1908, renders the Ferguson-Benthall patent invalid. What we said in the case of Virginia-Carolina Peanut Picker Company v. Benthall Machine Company applies with equal force to the case at bar. The evidence bearing upon this point is identical and as we held in that case conclusively settles this point. Therefore it would be a work of supererogation to again enter into a discussion of this point.

For the reasons above stated, the decree of the lower court is reversed, and the case will be remanded to that court for further proceedings in accordance with the views herein expressed.

Reversed.