## MYERS et al. v. HADFIELD-PENFIELD STEEL CO.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1926.)

No. 4390.

**1. Patents ⬅328—1,399,570, claims 12, 14, and 15, for frame structure for attachment with tractors, held not infringed.**

Myers patent, 1,399,570 claims 12, 14, 15, for frame structure for attachment with tractors, *held* not infringed.

**2. Patents ⬅41—Rights under patent covering new and novel combination of old elements stated.**

Patent covering new and novel combination of old elements does not grant a monopoly on any of elements included in combination, and inventor is entitled only to protection on specific form and arrangement of such elements in their relation to each other. and to a fair range of equivalents within scope and purpose of invention.

**3. Patents ⬅91(4)—Evidence held to sustain defense of prior invention.**

Evidence *held* to sustain defense of prior invention, in suit for infringement of patent covering frame structure for attachment with tractors.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Patent infringement suit by Edward C. Myers and the Wehr Company against the Hadfield-Penfield Steel Company. From a decree of dismissal, plaintiffs appeal. Affirmed.

George L. Wilkinson, of Chicago, Ill. (Casanave Young, of Milwaukee, Wis., and Smith & Freeman, of Cleveland, Ohio, on the brief), for appellants.

James R. Hodder, of Boston, Mass. (Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, on the brief), for appellee.

Before DONAHUE and MOORMAN, Circuit Judges, and SESSIONS, District Judge.

DONAHUE, Circuit Judge. [1] This appeal involves the validity, and, if valid, the infringement, of claims 12, 14, and ·15 of the Myers patent, No. 1,399,570, issued December 6, 1921, on application filed July 6, 1920, to Edward C. Myers. The Wehr Company is the exclusive licensee.

The claimed invention "relates to tractors and particularly to industrial or lumber tractors." It further appears from the specifications that the main object of the invention is "to provide a special frame structure form-

ing a body frame, which can be attached to existing types of tractors without altering their construction, for the purpose of converting such tractors into industrial trucks." The claims in suit are copied in the margin.[1]

It is claimed by the appellants, who were plaintiffs below, that the Hadfield-Penfield Steel Company, an Ohio corporation, is infringing these claims of the Myers patent by its structure, known and designated in the record as a "One Man" road grader. The defenses are invalidity, noninfringement, and prior invention. The defendant also filed a counterclaim, but that appears to have been abandoned. The district court entered a decree dismissing the bill of complaint.

The structure of the Myers patent consists of a commercial tractor, dismantled of wheels and front axle, to which is attached what is called a body frame, consisting of two parallel members of channel iron, positioned on opposite sides of the tractor, and suspended from the rear axle housing, the front ends converging and carrying a journal for a front wheel. The rear extension of these members forms the supporting frame of the truck platform or bed, and a shield is mounted crosswise on the truck frame, forming a front for the truck, and affording protection to the driver. A crossbar connecting the two side members of the frame passes under and supports the front end of the tractor. The original rear wheels of the tractor are replaced by rubber tired truck wheels and a single wheel is positioned in the journal attached to the front ends of the side members of the body frame.

---

[1] 12. A frame structure for attachment with tractors comprising a frame having members thereof for extending along the sides of the tractor, means for supporting the front end of said frame, a crosspiece extending under the front end of the tractor for supporting it and having its ends fastened to said side frame members, and means for supporting said members from the rear end of the tractor.

14. A frame structure for attachment with tractors comprising a frame having members thereof for extending along the sides of the tractor and under its rear axle housing, means for supporting the front end of said frame, means for supporting the front end of the tractor with its front wheels removed from said frame and clamps fastened to said members and said rear axle housing for supporting them from the rear end of the tractor.

15. A frame structure for attachment with tractors comprising a frame having members thereof for extending along the sides of the tractor, means for supporting the front end of said frame, means for supporting the front end of the tractor by said frame members and means for supporting said frame members from the rear end of tractor.

It is further stated in the description and specifications that "a tractor converted into a truck in this manner, and provided with three wheels, has a short turning radius, and is especially adapted for hauling lumber loaded on dollies which are in general use in lumber mills."

The defendant offered evidence tending to prove that the "One Man" road grader was designed and named by Ray J. Winsor of Petoskey, Mich., in the fall of 1918; that in June, 1919, he constructed and publicly and successfully operated a "One Man" road scraper; that, being financially unable to purchase a tractor and road grader, he borrowed a Cleveland tractor from Chester A. Robnolte and a horse-drawn road grader from Emmet county, Mich., and connected the grader with, and in front of the tractor, and by a body frame consisting in part of two parallel members placed lengthwise of the tractor and on opposite sides thereof with a supporting bar or beam, the ends of which were attached to the parallel side members and passing under the forward end of the tractor engine, carrying a portion of its weight. The side members of this frame extended a sufficient distance ahead of the power plant of the tractor, and were arched high to provide a sufficient space beneath for a road scraper, snow plow, or other road-working machinery.

The evidence further tends to prove that Winsor, who was wholly without means to construct these machines, was not successful in his efforts to induce a manufacturer to do so until some time after he had entered the employ of the Wehr Company, one of the plaintiffs in error; that while he was in the employ of the Wehr Company, in the spring of 1922, he constructed in its factory and under his direction and supervision a "One Man" road grader, by combining a Fordson tractor and a Russell pony grader substantially in accordance with his original idea, and also substantially in accordance with the road graders now being manufactured by the Wehr Company and the Hadfield-Penfield Steel Company. This road grader was sold by the Wehr Company at a profit on the same day it was demonstrated.

The Wehr Company then proceeded to make and sell, in quantities, frames constructed in accordance with the Winsor idea for attachment to Fordson tractors and road-grading machinery, and are still constructing the same type of road graders, with immaterial changes, as the first one constructed by it under the supervision and direction of Winsor.

Winsor, at the direction of the Wehr Company, procured its attorneys to apply for a patent in his name. The application was signed by Winsor, but not forwarded to the Patent Office, evidently because Winsor refused to sign a license agreement prepared by the Wehr Company, making it the exclusive licensee to manufacture and sell these graders or other road-working machinery constructed in accordance with his claimed invention. The parties being unable to agree upon a royalty or division of profits, Winsor left the employment of the Wehr Company, and later entered into the employment of the Hadfield-Penfield Steel Company, to which company he granted an exclusive license. After Winsor left the employ of the Wehr Company, that company procured an exclusive license from Myers under the patent in suit.

It is apparent that the device for a lumber or industrial truck to the rear of a tractor is an entirely different structure, serving a wholly different purpose than a road grader or other road-working device attached in front of and pushed by a tractor; nor does it appear how the use of the Myers frame, projecting to the rear of the tractor, and formed and shaped to carry the platform of a truck, could in any way suggest the use of a frame in front of the tractor of wholly different form and shape to which a road scraper or other road-working device may be attached and pushed by the tractor. The purposes to be accomplished are wholly different, and the respective combinations to produce these different results have no resemblance to each other, except in so far as each contains elements old in the automobile art, and the incidental use by each of the power plant of a tractor to furnish motor power. It is therefore contended that these structures are not in the same inventive field, and that the Winsor truck now being manufactured by the defendants, the Hadfield-Penfield Steel Company, does not infringe the Myers patent.

[2] It is claimed, however, on behalf of the appellants, that the Myers patent is generic in its nature, and that, by reason of the allowance by the Patent Office of these broad claims in suit in connection with the narrower claims of the patent, they should be broadly construed to include any form of frame attached to the power plant of any tractor for any purpose. With this contention we cannot agree. Side frames are not new to the automobile or vehicle art, nor is there anything new or novel in a crossbar, nor does it constitute invention to utilize this crossbar as

a means of supporting the front end of the tractor in place of the front axle. Myers' invention consists of a combination and adjustment of elements old in the art, adapted to a new and useful purpose, but a patent covering a new and novel combination of old elements does not include a grant of a monopoly upon any of the old elements included in the combination. On the contrary, the inventor is entitled only to patent protection on the specific form and arrangement of old elements in their relation to each other in the patentable combination, and to a fair range of equivalents within the scope and purpose of his invention. To this end the claims of his patent may be broadly construed, but they cannot be so broadly construed as to deny the use of any or all of these old elements for uses and purposes not within the contemplation of his invention or the results to be accomplished thereby.

[3] It is perhaps unnecessary to discuss the defense of prior invention. Upon this question the Patent Office has recently held that Winsor is prior to Myers, in an interference proceeding, the two counts of which substantially include the elements of the claims in suit. This court is also of the opinion that the defendant has fully sustained, by the evidence in this case, its defense of prior invention.

Decree affirmed.