**MYERS et al. v. AUSTIN–WESTERN ROAD MACHINERY CO.**

No. 4408.

Circuit Court of Appeals, Seventh Circuit.

Dec. 31, 1930.

George L. Wilkinson, of Chicago, Ill., for appellants.

Wallace Lane and Clarence J. Loftus, both of Chicago, Ill., and Louis Quarles, of Milwaukee, Wis., for appellee.

Before ALSCHULER, SPARKS, and PAGE, Circuit Judges.

SPARKS, Circuit Judge.

This is a patent infringement suit. It involves an infringement of claims 12, 14, and 15 of patent No. 1,399,570, issued December 6, 1921, and claims 19 and 28 of patent No. 1,466,098, issued August 28, 1923. The application for each of these patents was filed July 6, 1920, and both patents were issued to appellant Edward C. Myers; and appellant Wehr Company is the exclusive licensee thereunder. The defenses are invalidity and noninfringement. The District Court dismissed the bill for want of equity.

The first of these two patents relates "particularly to industrial or lumber tractors," and has for its main object "a special frame structure forming a body frame which can be attached to existing types of tractors without altering the construction, for the purpose of converting such tractors into industrial trucks." The claims in issue under the first patent are as follows:

"12. A frame structure for attachment with tractors comprising a frame having members thereof for extending along the sides of the tractor, means for supporting the front end of said frame, a cross piece extending under the front end of the tractor for supporting it and having its ends fastened to said side frame members, and means for supporting said members from the rear end of the tractor."

"14. A frame structure for attachment with tractors comprising a frame having members thereof for extending along the sides of the tractor and under its rear axle housing, means for supporting the front end of said frame, means for supporting the

front end of the tractor with its front wheels removed from said frame, and clamps fastened to said members and said rear axle housing for supporting them from the rear end of the tractor.

"15. A frame structure for attachment with tractors comprising a frame having members thereof for extending along the sides of the tractor, means for supporting the front end of said frame, means for supporting the front end of the tractor by said frame members, and means for supporting said frame members from the rear end of the tractor."

The second patent relates to harvesters, and "its primary object is to provide harvesting machinery which can be readily attached to small types of tractors in a manner to form a unitary structure without materially altering the tractor. The invention relates more particularly to a harvester having a frame construction adapted for connection with the modern frameless type of tractors which are built to pull or push a load but not to carry it. The frame members of the harvester are extended back and firmly secured to the rear axle housing of the tractor and its draw bar, and provide for a support for the front end of the tractor from which the front axle and wheels have been removed,—thus harnessing the tractor into the harvester."

The claims in issue under the second patent read as follows:

"19. A supporting frame for attachment to a tractor comprising a frame having members thereof for extending along the sides of the tractor, means for supporting the front end of said frame, a cross piece extending under the front end of the tractor for supporting it and having its ends fastened to said side frame members, means for fastening said members to the rear end of the tractor and a second frame structure adjustably carried by the front end of said supporting frame and extending to one side thereof."

"28. A supporting frame for attachment to a tractor comprising a frame having members thereof for extending along the sides of the tractor, means for supporting the front end of said frame, a cross piece extending under the front end of the tractor for supporting it and having its ends fastened to said side frame members, means for fastening said members to the rear end of the tractor, and a second frame structure adjustably carried by the front end of said supporting frame."

It is appellants' contention that Myers' conception in its generic sense is not limited to converting a Fordson tractor into any particular implement-supporting or load-carrying tractor, but that the frame attachment is adapted to afford a direct support upon the tractor for a truck, or any industrial or agricultural implement.

■ Appellants claim that the application upon which Myers' first patent was granted disclosed his generic invention in a specific form by way of a frame attachment for converting the Fordson tractor into a truck; and that the application upon which Myers' second patent was granted disclosed the same generic invention in a specific form for supporting upon the side members of the frame attachment, in front of the tractor, an implement in the form of a harvester.

Appellant Wehr Company and appellee are competitors in trade, both making and selling a road grading machine called "a one-man grader." Appellee's structure, which is charged to infringe the claims above referred to, is a motor driven road grader. It is constructed as a complete unit, and is used solely for grading roads. It comprises a complete integral machine with a built-in framework, supported by front and rear wheels, carrying a grader blade immediately below the framework. Its power plant, by which the rear wheels are driven, is permanently built into the unitary structure and is carried by a frame supported from the front and rear wheels. The operator drives and operates the machine by control devices located on the machine.

The road grader made by appellants is quite similar in construction to that of appellee, and appellants claim that their structure is made as a specific form of the generic conception embodied in Myers' patents. Appellee, however, contends that its structure is derived from and follows Winsor's conception, which he reduced to practice in June, 1919. The evidence fairly shows that Winsor, while employed by appellant Wehr Company, during the spring or early summer of 1922 did design and devise the grader now being made and sold, with immaterial differences, by both Wehr Company and appellee. Whereupon Wehr Company began manufacturing the grader designed and devised by Winsor, and attempted to reach an agreement with Winsor for a continuance of the manufacture and sale of the apparatus.

In June, 1922, the attorneys for Wehr Company were directed to prepare a patent application for Winsor, which he executed in October, 1922. Meanwhile Winsor left Wehr Company, having failed to agree with

it upon his compensation. He was next employed by Hadfield-Penfield Steel Company, which he had interested in his grader. While with this company he learned, in November, 1922, that his application for a patent had never been filed by the attorneys of Wehr Company because he had never paid the necessary attorney fee. This was paid on November 23, 1922; but that application was never filed and was returned to Winsor in January, 1923, by the attorneys of Wehr Company. Winsor, however, filed an application for a patent on his apparatus on April 7, 1923. In the meantime the Hadfield-Penfield Steel Company began producing Winsor's grader, and on April 10, 1923, took out a license under him. Wehr Company had theretofore taken out a license under Myers' first patent and had continued to make the grader.

After Myers' first patent had been issued, the Patent Office declared an interference between it and the application of Winsor, above referred to, the two counts of which substantially include the elements of claims 12, 14, and 15 of Myers' first patent. The examiner of interferences found, on August 14, 1925, that Winsor had established a prior conception and reduction to practice, and that he was guilty of neither laches nor abandonment, and priority of invention was accordingly awarded to him. On appeal the examiners in chief affirmed the decision of the examiner of interferences. On further appeal the assistant commissioner reversed the decision of the examiners in chief as to their holding that Winsor is not estopped to make claims 12, 14, and 15 of Myers' first patent, citing the two-year rule as announced by the Supreme Court in Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491. The commissioner accordingly awarded priority of invention to Winsor on May 15, 1926.

It is quite true that Wehr Company was neither a party nor privy to a party in the interference proceeding, and that the decision of the commissioner is not controlling as between the parties to this suit. At that time Winsor was seeking a patent on his apparatus, and he was endeavoring to incorporate into his application claims 12, 14, and 15 of Myers' first patent, and the commissioner held that Winsor was estopped, on account of delay, from making these claims; but Winsor was awarded priority of invention of the road grader which is involved in this suit. The result is that Myers and his licensee still retain the patent, with its accompanying presumption of validity, so far as the instant case is concerned, and the decision of the commissioner does not preclude him from maintaining this action for infringement. Neither does the commissioner's decision preclude appellee from asserting noninfringement or invalidity on account of prior use.

In 1924 claims 12, 14, and 15 of Myers' first patent were asserted by appellants against Hadfield-Penfield Steel Company, which was making and selling a road grader in all substantial respects the same as that of appellee. The case was tried before Judge Westenhaver of the Sixth Circuit, and he held in a very lucid and logical opinion that there was no infringement. He says in part:

"The device of the Myers patent is an entirely different article from the road grader in controversy. They are not in the same inventive field. The only similarity is that Winsor utilized a Ford tractor stripped of its front and rear wheels, and Myers did the same thing. The road grader is not, however, a tractor nor an attachment to be used with a tractor, in any proper sense of the word. * * * Nor is it an industrial truck designed either to carry a load or to haul a trailer. * * * While he (Myers) describes his device as an improvement in tractors, it is really a special frame structure forming a body frame intended to utilize the power plant and mechanism of a dismantled tractor for the purpose of converting it into an industrial truck. It is said in the (Myers) specifications that this frame attachment is so designed that a tractor may be thus converted without altering the tractor or dismantling it. This is not literally or even substantially true, because the rear cleated wheels are removed and ordinary truck wheels substituted and the front wheels and the axle are wholly discarded, while the engine, fuel tank, steering column and rear axle and housing only are preserved and used. * * *

"As applied to claims 12, 14, and 15, Myers provided two side frames extending along the sides of the power plant and supported at their front end by some means not specified in the claim; a cross-piece supporting the front end of the tractor and resting on the side frame members, and means for supporting the side frame members from the rear end of the tractor. The only means specifically disclosed or even generally indicated for supporting the front end of the frames is a single front wheel under the converging front ends of the side frames and used not only to support the front end of the side frames but to guide and steer the apparatus. * * *

"The one-man road grader is an automotive working apparatus intended and designed to carry, drive, and operate a road grading and scraping machine. It utilizes the power plant, including fuel tank, rear axle and housing of a Fordson tractor, and combines it with an existing and well-known horse or tractor drawn road scraper. It is not designed to carry or drag a load. * * * The road grader, instead of having, as Myers, a low hung frame to provide a carrying platform, has a high, upwardly arching frame to carry underneath the road working devices, and has also a turn-table for the grading blade between the front and rear wheels, mechanism for raising and lowering the grader blade, and for changing the angle of the blades. The upwardly arching frames are not the equivalent of Myers' side frame. Its front axle, upon which the front ends of the arched frames rest, is not the equivalent of the pivoted wheel, means for supporting the forward ends of the side frames. The yoke or strap, supporting the front end of the tractor, is not the equivalent of the cross-bar of Myers. The side frames are not attached to the rear axle by any means equivalent to those specifically disclosed by Myers. * * *

"Plaintiffs contend that the claims in issue cover broadly the simple elements of side frames, means to support the front end thereof, a cross-bar with its ends resting thereon, and means to support the side frames on the rear axle. It is further contended that any device or apparatus using these simple elements or equivalent means in an apparatus driven by its own power, is an infringement. These contentions cannot be sustained. The elements thus broadly claimed are present in most if not all automobiles or other vehicles. A transfer of these simple and universal elements into a frame attachment to be used in connection with a tractor or its power plant does not amount to invention. They cannot be thus monopolized."

On appeal this decision was affirmed by the Circuit Court of Appeals in the Sixth Circuit. Myers et al. v. Hadfield-Penfield Steel Co., 10 F.(2d) 56.

The facts as stated by Judge Westenhaver are in almost every particular like the facts in the instant case. We cite this decision, not as controlling authority in the case at bar, but as being very persuasive and as meeting our approval. We hold that appellee is not guilty of infringement as to claims 12, 14, and 15 of Myers' first patent.

Appellants contend, however, that regardless of whether or not appellee's device infringes the claims of the first patent, it does infringe claims 19 and 28 of Myers' second patent, for the reason that Myers' second patent discloses and claims a supporting frame attachment to a tractor which comprises not merely the frame attachment of the first patent, but, in addition thereto, also comprises a second frame structure adjustably carried by the front end of the main frame, which enables an implement to be operatively and adjustably mounted upon the main frame, thereby converting a standard tractor into a unitary agricultural or industrial power driven implement.

In discussing this question two propositions which are established in the foregoing opinion must be borne in mind: (1) Appellee's apparatus does not infringe any of the claims of the first patent. (2) Every device or apparatus using the elements or equivalent means of the first patent in an apparatus driven by its own power is not an infringement. The only new element involved in the second patent is a frame structure adjustably carried by the front end of the main frame. Unless this element, either by itself or in combination with the elements contained in the first patent, constitutes invention which appellee's device infringes, appellee cannot be held liable as an infringer of the second patent.

Much that has been said in the foregoing opinion by way of contrast of appellee's device with Myers' device under the first patent applies likewise in a contrast of appellee's device with the device under Myers' second patent. Appellants' "harnessed-in" tractor and appellee's unitary grader are so different in their essential elements, principles of operation, and results to be accomplished, that comparison is difficult, and almost impossible. The distinctions between them are quite obvious upon a casual examination, and cannot be made more so by a detailed discussion or description. The primary object of Myers' second patent is to provide harvesting machinery which can be *readily* attached to small types of tractors without *materially* altering the tractor, thus permitting the tractor to be readily detached and used for other purposes. This feature is emphasized as a benefit to the farmer. No such claim is made for appellee's device, nor is its power plant designed for use in any capacity other than that of the grader in which it is built. Appellee purchases its motor equipment from the International Harvester Company, without rear wheels, front wheels, front axle, or

steering mechanism. It builds this equipment into its one-man motor grader as an integral part thereof. The motor thus purchased at no time ever formed a part of a tractor, or was ever used in connection with a tractor. One witness, however, testified that he had seen one of appellee's graders with the original rear wheels of the tractor in use upon it, but it is quite evident that such is not the general practice; but even though such wheels were generally used, this fact would in no wise constitute an infringement of appellants' device, nor would it alter the use for which appellee's grader is intended.

If appellee had manufactured its entire device, instead of purchasing the power plant from other parties, it would be most difficult indeed to comprehend wherein it infringes appellants' claims. This is what Millican and Weist did with relation to an interconvertible harvester, mower, or tractor for which patent No. 1,251,265 was issued to them in 1917. In the application for that patent it is stated:

"Another object is to provide a combined tractor and harvester that shall be so constructed that the harvesting apparatus may readily be disconnected from the tractor machine in order that the latter may be utilized for various purposes other than harvesting crops; ⁎ * *

"Another object is to provide a tractor that shall be so constructed as to be capable of operating either a mowing appliance, plowing or cultivating implements, or to carry a suitable wagon bed or carrying frame for hauling purposes, or which may be utilized without a wagon bed for hauling logs or other articles, or for dragging various implements or articles or for pulling vehicles."

Every element in appellants' patents which is calculated in any way to accomplish the above enumerated uses is present, so far as we can see, in Millican and Weist, and in our judgment they meet the claims in the instant case. The patent to Millican and Weist is cited by appellee as prior art, and the only distinction between it and appellants' patents which appellants have called

to our attention is that "the Millican patent requires the building of a special form of tractor adapted for certain specific uses, and contains no suggestion whatever as to converting a *standard commercial tractor* adapted only to pull a load into a load or implement-carrying machine." (Italics ours.) It would seem therefore from appellants' argument that because a tractor other than a standard commercial tractor was used there is no conflict in the claims of the patents just referred to. Based upon appellants' premises, we think this is quite a logical deduction. For if appellants' claims are read to include every form of tractor, then Myers' second patent is anticipated by Millican and Weist. This leads us to the conclusion that the sole purpose of Myers' second patent was to utilize a standard commercial tractor in conjunction with a harvesting machine in such manner that they could be readily attached and detached, thus permitting the tractor to be easily restored to its original condition and for its original purposes.

Thus it will be seen that two things must concur before devices such as those in suit can be considered as entering the realm of appellants' second invention: (1) A standard commercial tractor must be used. (2) It must be used in such manner, within the purview of appellants' patent, that it may not only readily be attached, but readily detached and restored to its original uses.

Appellee's device does not use a standard commercial tractor; it uses only such tractor's motor equipment. This is permanently built into the grader. There is no claim that this motor equipment can be readily attached to the grader, or that it can be readily detached and restored as a tractor to its original uses; nor can it be. So far as the evidence shows, no such use has ever been made of it. We think that appellee's device and appellants' device under Myers' second patent are in different inventive fields, and for this reason it is not necessary for us to pass on the validity of appellants' patents. There is no infringement of claims 19 and 28 of Myers' second patent.

Decree affirmed.