## BAILEY v. GALION IRON WORKS & MFG. CO.

### No. 3944.

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1936.

Claude K. Wingate, of Columbia, S. C. (J. Fraser Lyon, of Columbia, S. C., on the brief), for appellant.

Charles M. Nissen, of Columbus, Ohio (Tobias & Turner, of Columbia, S. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

James F. Bailey, patentee of United States patent No. 1,479,422 of 1924, brought suit in the District Court charging infringement of the patent by the Galion Iron Works & Manufacturing Company. The District Judge, holding valid the claims relied on but finding no infringement by the defendant, dismissed the bill, and this appeal followed.

The invention is entitled "Demountable Attachment for Tractors." It relates to a structure having the general form of a running gear construction of an automotive truck for the transportation of heavy articles. The stated object is to provide an attachment adapted to be detachably secured to a tractor of ordinary type without extensive change in the construction of the tractor; and to provide in the attachment a frame to be attached to fixed parts of the tractor, wheels for supporting the frame, and a novel spring suspension arrangement for mounting the frame upon the wheels; and also a power take-off arrange-

ment from which the power may be transmitted.

With this end in view, the iron or steel frame is made of convenient width and length. This frame is supported by axles upon which are wheels resting on the ground. Upon this frame a tractor containing a power unit is mounted and from the rear axle of 'the tractor the wheels have been removed. There is substituted for these wheels an attachment which, working in conjunction with an attachment on the rear wheels of the supporting frame, transmits the power from the tractor thereto. In the drawings accompanying the letters patent, a sprocket and chain arrangement is used for the transmission of power from the rear axle of the tractor to the ground wheels of the frame; but the patentee states that he is not limited to this means of power transmission and any other practical means may be employed for the purpose. The principle of the invention is the utilization of the power produced by the tractor to propel both itself and the attachment as a unit whereby cheap power capable of doing heavy work is secured.

The frame consists of a pair of spaced apart longitudinal members, each consisting of a rear and a front section, and a cross member connecting the said members at the extremities of the rear sections. The forward end portions of the rear sections are secured to the front sections. A U-shaped yoke is provided as the connection between the forward ends of the front sections and the front suspension member of the tractor. The web portion of the U-shaped yoke is pivotedly attached to the suspension member at the rear of the front axle so that the web portion of the yoke extends transversely of the tractor and the arms thereof extend upwardly at opposite sides of the radiator of the tractor. By this means the framework is attached to a fixed part of the tractor. The axles of the ground wheels are provided with a pair of semi-elliptical leaf springs for each of the axle housings. With the organization described, the frame of the attachment is flexibly supported above the axle housings whereby shocks and jars occasioned by inequalities of road surface will be dissipated to a considerable extent without being transmitted to the frame.

The specifications contain the following statement: "From the foregoing description of the various parts of the device, the operation of the same may be readily understood. A tractor may be employed in the transportation of loads ordinarily requiring the use of a truck when an attachment embodying my invention is applied thereto, in the manner described. Since the attachment is demountable, the tractor may be used in performing the functions for which originally provided when not being used in the transportation of materials."

The Galion Iron Works' roller, which is charged to infringe, may be described as follows: A frame of suitable dimensions is made and mounted upon a rear axle, to which are attached two ground wheels or rollers. Another ground wheel or roller is attached to the front end of the frame. Upon this frame is supported a power plant or unit of the type used by the International Harvester Company in a tractor. The power plant is modified as to its rear axle construction and additional parts are supplied, and the plant is permanently built into the road roller, the frames extending forwardly from the power plant and not rearwardly therefrom. Upon each end of the tractor's rear axle is placed a pinion gear and another gear, commonly called a "bull gear," is built about the hub of the roller; the pinions on the rear axle of the tractor being made so as to mesh into the bull gear. By this means the power is transferred from the tractor to the rollers so that the whole machine moves as a unit. No springs are embodied in the structure, and the frame is rigidly supported on the rear axle. It would not be practicable for the user to reconvert the structure into a tractor.

Claims 2 and 4 of the patent are relied on. Claim 2 is as follows: "The combination with a tractor of a frame comprising horizontally disposed side members including front end portions extending beyond the rearward end of the tractor at opposite sides thereof, means connecting with the forwardly extending end portions of the side members of the frame and connecting said end portions with a fixed part of the tractor, an axle disposed transversely of the frame, spring suspension means for supporting the frame upon the axle, wheels mounted upon the axle adjacent to the ends thereof, power transmitting elements mounted upon the drive axle of the tractor and replacing the usual drive wheels of the tractor, power transmission elements, associated with the wheels of the tractor and

being adapted to co-operate with the first named power transmission elements, and means connecting each of said first named power transmission elements with one of said second named power transmitting elements for imparting a torque from the former to the latter."

It will be observed that one of the elements in claim 2 is "spring suspension means for supporting the frame upon the axle." There are no spring suspension means in the defendant's structure. The omission of this element is sufficient, in our opinion, to avoid the charge of infringement, for it is well established that the omission of an element of a claim of a patent without substituting an equivalent therefor avoids infringement of the claim. Imperial Bottle Cap & Machine Co. v. Crown Cork & Seal Co. (C.C.A.) 139 F. 312, 323; National Mach. Corp. v. Benthall Mach. Co. (C.C.A.) 241 F. 72; Debnam v. Benthall Mach. Co. (C.C.A.) 241 F. 103. The plaintiff attempts to avoid this difficulty by pointing out that a function of the springs in the patented structure is to hold in place the axle upon which the ground wheels turn; and that the defendant, instead of using springs, uses a housing or block secured to the frame by which the axle is held in place. In short, the contention is that the fastening by which the defendant's axle is held securely to the frame is equivalent to a spring serving the same purpose. But the conclusion contended for does not follow. The spring suspension means of the patented structure serve not only to support the frame upon the axle, but also as a spring to minimize the shocks produced by inequalities of the road. The importance and desirability of so doing are mentioned in the specifications as above set out; and it is obvious from the inclusion of the spring as an element in the claim of the patent that it was regarded as a substantial feature of the patented structure. Having been deliberately included as a feature of the claim, it may not now be discarded in order to establish the charge of infringement. For cases in which it was held that infringement was avoided by the omission of springs called for by the claim of a patent, see Fay v. Cordesman, 109 U. S. 408, 420, 421, 3 S.Ct. 236, 27 L.Ed. 979; Vanderveld v. Rollman & Sons Co. (C.C. A.) 28 F.(2d) 948, 951; Vibroplex Co. v. J. H. Bunnell Co. (C.C.A.) 16 F.(2d) 975, 976.

Claim 4 of the patent is as follows: "A demountably supported attachment for tractors comprising a frame mounted upon wheels and having side members adapted to extend forwardly of the rear end of the tractor along opposite sides thereof and to converge toward each other at their forward ends, and a substantially U-shaped yoke adapted for attachment intermediately to the front suspension structure of the tractor, the arms of the yoke being adapted for connection with the side members of said frame."

It will be observed that the claim calls for "a demountably supported attachment for tractors." The importance of this feature is stressed in the specifications in the title of the patent, "Demountable Attachment for Tractors," and in the express statement that the object of the invention is to provide an attachment for a tractor adapted to be detachably secured thereto without extensive change in the construction of the tractor, so that when the attachment is in place, the whole machine may be used as a truck, and when disassembled may be used as a tractor.

We do not find this feature in the defendant's structure. It is true that its road roller consists in part of the power unit used by the International Harvester Company in its tractors, and in part of a frame mounted upon axles to which are attached ground rollers; but the structure is a unitary machine and it is not practicable to disassemble the parts and rearrange them so as to obtain or restore a tractor. A very similar situation was disclosed in Myers v. Austin-Western Road Machinery Co. (C.C.A.) 45 F.(2d) 751, in connection with a charge of infringement of the Myers patents, No. 1,399,570 and No. 1,466,098, relating to a frame attachment for converting a tractor into a truck. Infringement of these patents by a road grader manufactured by the Machinery Company was charged, but the court, citing the prior decision of Judge Westernhaver affirmed in Myers v. Hadfield-Penfield Steel Co. (C.C.A.) 10 F.(2d) 56, held that the patents were not infringed. Commenting on the substantial differences in the two structures, the court used the following language that may be well applied to the case at bar: "Appellants' 'harnessed-in' tractor and appellee's unitary grader are so different in their essential elements, principles of operation, and results to be accomplished, that comparison is difficult, and

almost impossible. The distinctions between them are quite obvious upon a casual examination, and cannot be made more so by a detailed discussion or description. The primary object of Myers' second patent is to provide harvesting machinery which can be readily attached to small types of tractors without materially altering the tractor, thus permitting the tractor to be readily detached and used for other purposes. This feature is emphasized as a benefit to the farmer. No such claim is made for appellee's device, nor is its power plant designed for use in any capacity other than that of the grader in which it is built. Appellee purchases its motor equipment from the International Harvester Company, without rear wheels, front wheels, front axle, or steering mechanism. It builds this equipment into its one-man motor grader as an integral part thereof. The motor thus purchased at no time ever formed a part of a tractor, or was ever used in connection with a tractor."

It is also strongly urged that claim 2 of the patent is invalid by reason of the disclosures contained in the patents to Myers above mentioned, and the patent to McIntyre No. 1,449,189 of 1921; and that claim 4 is invalid by reason of the disclosures in the patent to Ronning, No. 1,706,256 of 1921. But this defense we need not consider.

The decree of the District Court is affirmed.