## RONNING MACH. CO. et al. v. CATERPILLAR TRACTOR CO.
### No. P–64.

District Court, S. D. Illinois, N. D.

Feb. 19, 1941.

Charles M. Nissen and Harker H. Hittson, both of Columbus, Ohio, and Max J. Lipkin, of Peoria, Ill., for plaintiffs.

Charles M. Fryer and Alfred C. Aurich, both of San Francisco, Cal., and Eugene R. Johnson, of Peoria, Ill., for defendant.

ADAIR, District Judge.

This cause arises upon the charge of infringement of Patent No. 2,020,271, commonly known as the Winsor Patent, and especially as to claims 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 19, 20 21, 22, 23, 24, 26, 27, 28, 29, 30 and 31, are charged to be infringed by the Caterpillar Auto Patrols and Caterpillar Motor Graders of the "12" series.

It is also charged that Patent No. 19,846, known as the Ronning reissue patent, and especially as to claims 1, 2, 3, 4, 5, and 6 are infringed by the Caterpillar Auto Patrols and "12" series motor graders.

Also, that Patent No. 1,658,353, known as the Ronning patent, and especially as to claims 12, 13, 14, 15, 16, 22, 23, 24, 25, 26 and 32, are infringed by the Caterpillar Auto Patrols and by the "12" series Motor Graders.

Also, that Patent No. 1,660,050, and especially as to claims 4 and 11 are infringed by the Caterpillar Trailer Patrol, and the graders Nos. 44 and 22 with front controls.

Also, claims Nos. 5, 6, 10, 21, 23, 25, 26, 27 and 28 of the same patent are infringed by the Caterpillar Terracers.

Also, Ronning Patent No. 1,883,403, and especially as to claims 2, 3, 4, 8, 9, 10, 15, 16, 17, 18 and 19 are infringed by the Caterpillar Auto Patrols and "12" series Motor Graders.

Also, other claims of said patent are infringed by the Caterpillar Trailer Patrol when provided with power control mechanism.

Also, that Patent No. 2,147,631, known as the Arndt patent, by mechanism employing an arcuate rack as a part thereof, and especially as to claims 1, 2, 3, 6, 17, 18, 36, 38, 39 and 42, are infringed by the Caterpillar Graders Models, 33, 44 and 66, and the motor graders of the "12" series.

To such bill of complaint the defendant Caterpillar Tractor Company has filed its

answer and counterclaim, and in such answer deny said complaint generally and severally, and in such counterclaim ask that said plaintiffs, and each of them, be enjoined from further action in relation to such patents set forth in said complaint, by reason of the said defendant manufacturing said machines charged with such infringement, and for declaratory judgment.

Prior to the hearing of this cause, depositions were taken and a voluminous record now appears by reason of the introduction of such depositions and oral testimony in court.

The major part of the evidence and argument presented in this court applied to the Patent No. 2,020,271, heretofore referred to as the Winsor Patent, and in order to determine the contents of said patent and the validity of the claims afterwards incorporated in the patent, the court has paid particular attention to the application as originally prepared in the year 1922, and in said specifications and claims we find the following wording as shown in Winsor's Exhibit No. 6: "This invention relates to a tractor and to an attachment therefor." And the further statement, "further objects are to provide an attachment for a tractor to receive the front wheels of the tractor and to engage the bearing and housing of the rear axle." The application then provides for a steering mechanism to be removed from the rear portion of the tractor and attached to the front portion and for the placing of a ground working tool between the front wheels and engine body suggesting a scraper, etc., which said application was subscribed to on or about the 9th of October, 1922, and Young and Young of Milwaukee, Wisconsin, were appointed his attorneys with full power of substitution and revocation. This petition was never filed in the Patent Office.

On the 29th day of March, 1923, a petition was filed with the Commissioner of Patents by the said Roy J. Winsor in which James R. Hodder was appointed his attorney with full power of substitution and revocation. The objects as stated by said patentee in said application are as follows:

"My present invention relates to a novel and improved road-working implement which may be assembled by bringing together a power-traction unit of an ordinary standard type of tractor comprising a body carrying a motor, suitable transmission and driving axle to which traction means are connected, and a suitable framework provided with steerable wheels and a road-working implement, such framework being connected to such power traction element in a manner to constrain rotation of the power-traction element with respect to the frame about a horizontal axis."

"In carrying out my invention I am enabled to utilize any of the well known types of tractors, 'Fordson' tractors, 'Cletrace', 'Holt' or 'Caterpillar' tractors, or the like, which are built in quantity production and are adapted originally as pulling vehicles and stationary power plants. By means of my invention I provide suitable attachments to apply to such tractors, to convert them into relatively lengthened vehicles, with the original power traction units as pushing elements, and with steering or guide wheels sufficiently spaced from the propelling mechanism so as to carry between the front wheels and the power plant and suspended from the framework road-working implements, such as road grading devices. An important advantage and feature of this construction consists in the fact that a machine is thus provided, utilizing a standard type of power plant and engine and driving construction, together with a very simple and economical attaching frame. Furthermore, an advantageous feature consists in the fact that these attaching frames can be readily shipped, and assembled at distant points, in ordinary garages or by usual farm labor."

"In carrying out my invention I can convert a standard type of tractor into an efficient operating machine by providing a framework suitable for speedy attachment, in a merely nominal space of time and without the slightest machine work or the like. Thus in converting a 'Fordson', for example, I provide a set of side frames adapted to be attached directly to the rear axle, which frames extend forwardly and upwardly a sufficient distance to provide length and height to swing the desired road-working implements under the frame, said frame having a pivoted forward truck to which the original tractor wheels can be applied if desired. Thus the operation of converting a tractor into a machine of the type described consists simply in detaching the front wheels, attaching the same to the forward truck of the framework, and clamping, bolting or otherwise securing the rear ends of the side frames about the rear axles of the tractor driving mechanism—a matter of but a few moments and capable of consummation without skilled labor, in-

dependent of machine shops, boring, fitting, or other expert operation. Thus a pulling tractor is almost instantly converted into a road machine, wherein the power plant becomes the pushing element for the completed converted machine."

None of the claims relied upon were contained in the application as filed on April 27, 1923, and all of said claims were added to the application in the year 1935 shortly before the patent was issued and in the decision rendered by Judge Schoonmaker in the case of Galion Iron Works & Mfg. Co., v. Beckwith Machinery Co., D.C., 25 F. Supp. 73, dated June 13, 1938, claim No. 31 was considered typical of the claim filed in the year 1935.

This court is, therefore, confronted with the determination of the intent of the inventor as shown by his specifications and drawings at the time of the filing of the original application for patent, and also, the matters covered by the original application as shown by claims and specifications filed at that time in order to determine whether or not claims filed some twelve years thereafter were within the intent and specifications of the application originally filed, or if said claims were not within the direct wording and inference of the original drawings and specifications had prior art intervened between the date of filing the original application and the filing of the claims relied upon.

A great conflict of evidence has arisen in this cause in regard to the time of the conception of the invention of Winsor. This also occurred in the Patent Office, and evidence was introduced at that time on the part of Winsor tending to prove that this particular invention was in the mind of the inventor prior to the year 1922, and as far back as 1919, which evidence was examined by the Patent Office. In this particular case, however, evidence has been introduced tending to show that evidence on the part of Winsor was falsified. The time Winsor is alleged to have had this patent under consideration was while he was a resident of Detroit, Michigan, and was later than the time alleged by Winsor. According to the testimony the thought of invention occurred in the mind of Winsor some time about the year 1919, and the court must, therefore, construe the application by reading the specifications and claims as filed in the Patent Office, and does take into consideration the conditions that existed at that time. The court is well aware that at

or about the time of the alleged invention the automobile industry had become quite extensive, and cars were being sold throughout the United States which necessitated the better construction and repair of roads; that maintenance of highways was at that time uppermost in the minds of automobile owners; and, that prior to this time, the road grader, horse-drawn, had become a common implement, and also, about this time different automobile manufacturers were stressing the sale of tractors. The tractor was in common use in pulling road graders and in doing general farm work. Tractors and road graders were common commodities and in general use.

From all the evidence in this case, and from the plans and specifications originally presented, and then again presented to the Patent Office, in the opinion of this court, the only patentable thought in the mind of Winsor was an appliance that would connect a tractor to the rear of a road-grading machine. It was the connection of two separate and distinct machines, the tractor pushing and not pulling the grading implement.

We are then confronted with the question of allowing the claims that covered entirely different matter not contemplated in the original application, and whether or not such claims were patentable because of prior art, and general improvement in the prior art machine.

The court is of the opinion that the proof in this case shows unquestionably that said claims were not to be considered as a part of the original patent, that prior art had defeated same, and that unless they stated the conception as set forth in the original application, plans and drawings directly or by inference these additional claims should not be considered valid in determining infringement of accused machines.

The court, therefore, being of the opinion that the original application was only a patent of an attachment between well-known road graders and well-known tractors, and that the machines complained of by the bill of complaint in this cause are not an attachment between a road grader and a tractor as understood in the sense of an attachment of two distinct machines, but on the contrary, the machines complained of in this case are machines in the entirety and not subject to severance, and not subject to use in a detached sense.

Counsel for both plaintiff and defendants have submitted for the consideration of the

court numerous citations involving issues similar to the ones at issue in this particular case. Among those citations perhaps the most important, and the one carefully considered by the court is the case of Myers et al. v. Hadfield-Penfield Steel Co., 6 Cir., 10 F.2d 56. In this case the charge of infringement was brought by Myers against Hadfield-Penfield Steel Company who were manufacturing a grader known as the "one man grader," and it is alleged that they were manufacturing the same under the Winsor patent, and that the defendant machine was a connecting machine consisting of a tractor such as is described in Winsor's patent with a grader frame as therein described. Myers claimed an infringement because of the provisions in one of Myers patent claims, which reads as follows:

"to provide a special frame structure forming a body frame, which can be attached to existing types of tractors without altering their construction, for the purpose of converting such tractors into industrial trucks." And the court found as follows: "(2) It is claimed, however, on behalf of the appellants, that the Myers patent is generic in its nature, and that, by reason of the allowance by the Patent Office of these broad claims in suit in connection with the narrower claims of the patent, they should be broadly construed to include any form of frame attached to the power plant of any tractor for any purpose. With this contention we cannot agree. Side frames are not new to the automobile or vehicle art, nor is there anything new or novel in a crossbar, nor does it constitute invention to utilize this crossbar as a means of supporting the front end of the tractor in place of the front axle. Myers' invention consists of a combination and adjustment of elements old in the art, adapted to a new and useful purpose, but a patent covering a new and novel combination of old elements does not include a grant of a monopoly upon any of the old elements included in the combination. On the contrary, the inventor is entitled only to patent protection on the specific form and arrangement of old elements in their relation to each other in the patentable combination, and to a fair range of equivalents within the scope and purpose of his invention. To this end the claims of his patent may be broadly construed, but they cannot be so broadly construed as to deny the use of any or all of these old elements for uses and purposes not within the

contemplation of his invention or the results to be accomplished thereby."

While this particular language was directed toward the Myers patent it is equally applicable to the cause at issue wherein the same rule of law should apply in construing Winsor's patent in the instant case.

Another case similar was the case of Wehr Co. v. Winsor, United States Circuit Court of Appeals, 6th Circuit, decision dated, May 12, 1927, 19 F.2d page 231. This case is one seeking performance of former employee's parol agreement to assign title to patent has burden of proving that invention came within the terms of the agreement. It only determines the question that Winsor's patent whatever it might have been, had not been assigned or was Winsor compelled to assign it to the Wehr Company.

Another decision covering this particular cause and in which the evidence was somewhat identical was Galion Iron Works & Mfg. Co. v. Beckwith Machinery Co., decided by Judge Schoonmaker in the District Court of Western Pennsylvania, on June 13, 1938, 25 F.Supp. page 73, 75, the said defendant was there charged with infringement with the identical machine herein charged, and in the words of the court appear the following:

"As we read the patent-drawings and specifications of the patent in suit, it appears to be perfectly plain the invention rests in the means for coupling any of the well-known tractors, such as the 'Fordson,' the 'Cletrace,' and the Holt or 'Caterpillar' with an ordinary road-working machine, and thus supplying the motive power to operate the road-machine, and still have the tractor to use for other purposes when it is not utilized for propelling a road-machine. There is no such provision for the use of the power-unit of the defendant's structure in that way. It is first and last a road-working machine, with no provisions whatever for removing the power-unit and utilizing it as a tractor.

"The only conclusion we can reach from reading the drawings and specifications of the Winsor patent, is that one must use a standard commercial tractor in such a way that it may not only be readily attached to a road-working machine, but also as readily detached therefrom and restored to its original uses. The defendant's device has no such provision. True, it has a motor-equipment, but that is built permanently into the road-machine. There is no contention

that it can readily be attached to the machine and as readily detached therefrom, and then utilized as a tractor.

"In a similar situation involving a patent covering a special frame structure for attaching existing types of tractors to industrial trucks, and also a patent for attaching such a tractor to harvesting machines, the Circuit Court of Appeals of the Seventh Circuit, in Myers v. Austin-Western Road Machinery Co., 45 F.2d 751, held those patents were not infringed by a road-grading machine which used a tractor's motor-equipment permanently built into the grader, because there was no provision for readily attaching the tractor equipment to the grader, and also for the detachment of the same and restoring the tractor to its original uses.

"That essential element of the claims of the plaintiff's patent is totally lacking in defendant's structure.

"This view makes it unnecessary to pass on the validity of the plaintiff's patent, except possibly we should say that no novelty can be claimed in the use of a motor to operate a road-machine. The machine shown and described in Oswald Patent No. 1,431,-594, was in public use and sold more than two years prior to the filing of the application. Appropriate findings of fact and conclusions of law in accordance with this opinion are filed herewith. A decree for dismissal of plaintiff's bill may be submitted."

And thereupon the said case was appealed, The Galion Iron Works and Mfg. Co. v. Beckwith Machinery Company, 3 Cir., 105 F.2d 941, wherein the said order of the District Judge was affirmed.

The case of Myers v. Austin-Western Road Machinery Company, supra, arising in the Seventh Circuit, was a charge of infringement under the Myers patent against Austin-Western Road Machinery Company. In this particular case the contention between the plaintiff and defendant was whether or not the machines were identical and whether or not the defendant machine infringed the Myers patent. The court held that the defendant machine did not use a tractor in the sense contemplated by Myers patent which discloses the use of a common tractor that might be attached or detached to another well-known piece of machinery. The question evidently was not raised as to the scope of the Winsor patent. As this court understands, this case only decided that a machine in which the power plant was built in the same, and did not have the attached and detachable features of a tractor, did not infringe the Myers patent because of this difference. In the opinion of this court, the Winsor patent is a patent on the attachment of two well-known pieces of machinery, the tractor and a road-grading machine, and for that reason in the opinion of this court the accused machine is not an infringement upon the Winsor patent, and the accused machine is not in the language of the Winsor invention, "a tractor and attachment therefor."

As I understand this case no attempt is made by the court to determine whether or not the accused machine complied with the Winsor patent nor was there any determination of whether or not the claims of the Winsor patent were valid and in conformity with the original application, specifications and drawings, but rather it was a determination that the accused machine did not infringe the Myers patent.

Another case submitted for the consideration of the court was the Galion Iron Works v. J. D. Adams Manufacturing Company, decided in the Southern Division of Indiana and affirmed by the Circuit Court of Appeals of the 7th Circuit as found in 105 F.2d page 943.

This was a case to determine the liability under a contract in which the defendant company had agreed with the plaintiff company, the holder of the Winsor patent, to pay a small consideration for a patent license contract. Such contract provided that until there was a decision of invalidity the defendant would pay the sum of $25 as royalty for each structure made and sold by it and which embodied one or more claims of patent until there was a decision as to validity or infringement, with respect to structures sold by licensee under certain model numbers prior to decision of non-infringement in licensor's suit against another, licensor was entitled to royalties on all structures which embodied one or more of claims of patent, notwithstanding decision of non-infringement or that royalties had not been paid, and this Circuit Court of Appeals held that the parties were bound by their contract and expressly refused to determine whether or not such claims were too broad and valid and that the same was not an issue before the court leaving the legality of said patent or claims and the question of infringement of the present charged machine for the further determination of the court, and of course,

this case did not in any way pass upon either infringement or on the validity of Winsor patent or claims.

In view of the findings of fact as found by this court, and filed herewith, and applying the same to the law submitted in the above case, together with numerous other citations submitted by plaintiff and defendants' counsel, the court finds that there is no infringement of the Winsor patent by the accused machine.

While the major portion of evidence submitted in this case was pro and con on the Winsor patent, nevertheless, certain evidence and arguments were presented in regard to Patents No. 19,846, 1,658,353, 1,660,050, 1,883,403 and 2,147,631, and in view of the findings of fact submitted herewith, and filed in this cause, the court is of the opinion that said patents were not infringed by the accused machines because of the prior art as stated in the findings of fact, and there was no similarity in the accused machines, and the patents hereinabove referred to.

For the above found reasons the court, upon proper submission of a decree, dismisses this said cause for lack of equity, at cost of plaintiffs. All necessary remedies having been found in this decree this counterclaim asking for declaratory judgment and injunction is denied.

### Findings of Fact.

Winsor Patent.

1. The case of Galion Iron Works and Manufacturing Company v. Beckwith Machinery Company reported in 105 F.2d page 941, a decision of the Circuit Court of Appeals of the Third Circuit, is not a bar to this suit upon the claims sued upon herein.

2. The accused Auto Patrols and Motor Graders are identical with the prior art machines of Oswald, Moats-Ruemelin, Fossum and in line with Avery and Godley, and therefore do not infringe.

3. Neither the accused Auto Patrols or Motor Graders contain the tractor and attachment therefor shown and described in the specification and drawings of Winsor and defined in the claims when properly construed, in the light of the history of Winsor in the Patent Office, the late addition of most of the claims in suit and the state of the prior art, and neither machines, therefore, infringe.

4. Each of the claims in suit herein was added to the application for the patent in suit approximately four years after machines substantially identical in construction and mode of operation with the accused machine were manufactured and sold to the trade by a competitor of plaintiff, Caterpillar Tractor Company, manufacturer of the accused machine, and twelve years after the Winsor application was filed for the legality of said claims cannot be inferred from the original specification and drawings of the application as filed in the Patent Office.

5. The machine shown and described in Oswald Patent No. 1,431,594 was in public use and sold more than two years prior to the filing of the application for the patent in suit, and is prior art with respect to said claims.

6. At the date of the filing of the application for the patent in suit, or at the alleged date of the making of the alleged invention, it was not invention to provide an old, well-known instrumentality, such as a grader, with an engine to make it self-propelling.

7. The only novelty residing in the plaintiff's patent rests in the means for coupling any of the well-known tractors with an ordinary road-working machine, and thus supplying the motive power to operate the road machine, and still have the tractor for use for other purposes when it is not utilized as a road machine. In the defendant's machine, there is no provision for the use of the power-unit as a tractor, there being no provision either for attaching or removing the power unit.

Ronning Patent 1,658,353.

1. Auto Patrols and Motor Graders do not infringe because identical with the prior art, Fossum and the Moats-Ruemelin construction.

2. Auto Patrols and Motor Graders do not infringe because of the absence of the tractor specified in the specification, and in each of the claims.

3. The Ronning patent 1,658,353 is void because anticipated by Dawson.

4. The Ronning patent 1,658,353 is anticipated even as to the idea of power from the engine to the working implement, if applied to the accused machines because, when so construed, the idea of that patent is completely disclosed in Fossum.

Ronning Patent 1,883,403.

1. The accused Auto Patrols, Motor Graders, Trailer Patrols and Drawn Graders 44, 66 and 77 do not employ the

interlock mechanism shown in the drawings and description and defined in the claims of Ronning Patent 1,883,403, and therefore do not infringe.

2. The Ronning Patent 1,883,403 is completely anticipated by the Oswald prior use, and also by the Oswald patent.

Ronning Patent 1,660,050.

■ 1. The accused Trailer Patrols and Terracers do not infringe because neither employs the automatic blade adjusting mechanism controlled by a tiltable axle shown in the drawings and specifications, and described in the claims of Ronning 1,660,050.

2. The accused Trailer Patrols and Terracers are merely utilization of conventional prior art structures of King, Carver or Morton, and therefore do not infringe Ronning, 1,660,050.

Ronning Reissue Patent 19,846.

■ 1. The accused machines do not infringe the above patent because said accused machines are still prior art machines being based upon the patents of Moats-Ruemelin and machines of like nature.

Arndt Patent 2,147,631.

■ 1. The accused motor graders and drawn graders 33, 44 and 66 omit one point adjusting mechanism shown in the Arndt drawings and specifications, and defined in the claims, employing a completely different mode of operation, and therefore do not infringe.

2. The accused machines are prior art conventional fitting for arcuate rack, as shown in Adams, Pulsen and Gustafson, and therefore do not infringe.

3. The Arndt disclosure is substantially identical with that of Hawley, and the patent is therefore anticipated and void.