GENERAL ELECTRIC CO. v. ALLIS-CHALMERS CO.

(Circuit Court of Appeals, Third Circuit. January 31, 1910.)

No. 35 (1,282).

1. PATENTS (§ 312*)—INFRINGEMENT—PROOF OF INFRINGEMENT.

The mere fact that a device may be within the letter of a claim of a patent is not conclusive proof of infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 543–549; Dec. Dig. § 312.*]

2. PATENTS (§ 328*)—INFRINGEMENT—CONTROLLER FOR ELECTRIC MOTOR.

The Potter patent, No. 671,232, for an improvement in controllers for electric motors, claim 1, construed in connection with the specification, and, as limited thereby, held not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suit in equity by the General Electric Company against the Allis-Chalmers Company. Decree for defendant (171 Fed. 666), and complainant appeals. Affirmed.

L. F. H. Betts and Ramsey Hoguet, for appellant.

Thomas F. Sheridan and Clifton V. Edwards, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge. The General Electric Company has brought this suit against the Allis-Chalmers Company for an injunction to restrain the latter company from an alleged infringement of the Potter patent, No. 671,232, dated April 2, 1901, for improvements in attachments for notched quadrants used in controllers for electric motors. The Circuit Court concluded that no infringement was shown, and by its decree dismissed the bill of complaint.

In the specification of his patent, Potter said that the object of his invention was "to positively insure a notch-to-notch movement" of the handle of the controller. The fact is that, while his invention aids in securing such movement, it does not insure it. The defendant's device does insure it. Still the question is whether claim 1 of the patent is broad enough to cover the defendant's device. It reads as follows:

"In a controller, the combination with the handle of the contact cylinder, of a latch pivoted thereon, a notched rack coacting with said latch, and means for automatically supporting said latch, when raised out of a notch, until the handle is turned to bring the latch over the next notch."

The latch of the defendant's device is not pivoted on the handle. It is wholly separate from the handle, and is operated by a lug depending from the handle, which, as the handle is turned, strikes the latch. If this were the only difference between the two combinations, it might, perhaps, be properly held that the defendant had done nothing more than to substitute for the complainant's latch a mechanical equivalent thereof.

There is another difference between the two combinations, however, that in our opinion is a material one. The fourth element of the complainant's combination is:

"Means for automatically supporting said latch, when raised out of a notch, until the handle is turned to bring the latch over the next notch."

This language is so general that resort must be had to the specification to ascertain the nature of the means employed for thus automatically supporting the latch. The model exhibited in court by the complainant corresponds with the description of the specification and with Figure 1 of the patent. A model of the defendant's device was also exhibited. Each of them has means for automatically supporting the latch when it is raised out of a notch; but the two means are so unlike that the combinations of which they are parts effect different results in different ways. By pressure on the thumb-piece of the handle of the complainant's controller, the outer end of the latch is

pressed down, and the inner end, by reason of the pivoted construction of the latch, is forced up or out of the notch in which it has been held, and, if the thumb pressure be continued and the latch be thus supported above the notches, the handle may be turned so as suddenly to throw all the power of the electric current into the motor regardless of the notches; in the defendant's device electric power must be gradually applied, because it is impossible to turn the handle of the controller, for the purpose of applying electric power, except by a notch-to-notch movement. In the complainant's device there is an auxiliary quadrant, with its series of notches, distinct from the main quadrant with its notches; in the defendant's device there is no auxiliary quadrant. In the complainant's device, when the motorman applies pressure to the thumb-piece, and thus forces the latch out of a notch, the auxiliary quadrant, actuated by a spring, slides forward until the apex of one of its teeth rests directly beneath the latch, so that, when the thumb pressure is released, the latch falls, or by a spring actuating it is forced, down upon the apex of that tooth, which arrangement is the "means for automatically supporting said latch, when raised out of a notch, until the handle is turned to bring the latch over the next notch"; in the defendant's controller, the handle has a depending lug, as above stated, which, when the handle is slightly turned in the direction opposite to that for the application of electric power, strikes the outer end of the pivoted latch, forces the inner end out of the notch in which it is settled, and, by continuous contact with the outer end of the latch, keeps the inner end from settling down into any other notch, or upon the apex of any notch, or from coming into contact with any part of the quadrant, until after the handle is turned in the direction for applying electric power. In the complainant's device, the auxiliary quadrant, when the latch is raised out of a notch, actuated by its spring as above mentioned, slides forward so that the apex of one of its teeth rests directly under the latch; in the defendant's device, the spring actuates the latch, after it has been forced out of a notch, by pulling it forward so that the latch rests directly over the apex of a tooth of the stationary quadrant. In the complainant's device, when the handle is turned in the direction for applying electric power, the latch, provided the motorman has released the thumb-piece from pressure and thereby permitted the latch to rest upon the apex of a notch of the auxiliary quadrant, will descend into the indentation of the next notch; in the defendant's device, when the handle is turned for the purpose of applying electric power, the latch is first brought, by the actuating spring with which it is connected, into contact with the inclined surface of the notch immediately beneath it, and is then forced forward by the same spring into the indentation of that notch. In the complainant's device the spring attached to the latch actuates the latch and forces it down upon the apex of a notch instantly upon the release of the thumb from the thumb-piece on the controller handle; in the defendant's device, the spring attached to the latch does not force the latch into contact with any notch until the handle of the controller is manually turned for the purpose of applying electric power.

While the complainant's patent is not limited to the particular device shown in its drawings, but purports to cover also "other modifications

or equivalent means for carrying out" the inventor's idea, the differences of construction and operation above mentioned are fundamental. The general language of the fourth element of the claim sued on, when read with the specification of the patent, as it must be, cannot be so broadly construed as to cover the defendant's device. The mere fact that the defendant's device may be within the letter of the claim sued on is not conclusive proof of infringement. This is shown in the opinion of Judge Cross in the court below (171 Fed. 666). We concur in the conclusion expressed by him in that opinion.

The decree of the Circuit Court will therefore be affirmed, with costs.