STANDARD TOBACCO STEMMER CO. v. TOBACCO STEMMING MACH. CO.

(Circuit Court of Appeals, Third Circuit. December 1, 1917.)

No. 2258.

PATENTS ⬦⟹328—INVENTION—TOBACCO STRIPPING MACHINE.

The Hutcheson patent, No. 713,886, for a tobacco stripping machine, *held* void for lack of patentable novelty and invention, in view of the prior art.

Appeal from the District Court of the United States for the District of Delaware; Edward G. Bradford, Judge.

Suit in equity by the Standard Tobacco Stemmer Company against the Tobacco Stemming Machine Company. From a part of the decree, complainant appeals. Affirmed.

For opinion below, see 237 Fed. 822.

Rogers, Kennedy & Campbell, of New York City (Robert Fletcher Rogers and William R. Kennedy, both of New York City, of counsel), for appellant.

William F. Hall, of Washington, D. C., Joseph C. Fraley, of Philadelphia, Pa., and J. Granville Meyers, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOOLLEY, Circuit Judge. This is a suit for infringement of eight letters patent for tobacco stripping machines, owned by the plaintiff. It is here on the plaintiff's appeal from the part of the decree by which the District Court dismissed the bill as to claims 3, 4 and 8 of Letters Patent No. 713,886, issued to J. A. Hutcheson, on the ground of non-infringement. 237 Fed. 822.

The art to which the patent relates, the inventions in the art, and the claimed invention of the patent in suit are so fully stated in the opinion of the District Court, that we shall address ourselves to the art and the patents as there disclosed and described, stating only so much as may be necessary to an understanding of our conclusions.

The art of stripping or stemming tobacco leaves was not new when Hutcheson entered it. It was so far developed that he expressly disclaims that his invention is primary or pioneer. The art has to do with the separation of the thick, brittle and valueless portion of the stem of a tobacco leaf from its thin, fragile and valuable membrane. It is practiced both by hand and machinery. We are concerned only with the mechanical practice, and only with the part of it in which the membrane of a folded or matted leaf, intended for use in smoking tobacco, is removed from the stem by chopping, cutting, ragging or tearing.

The stemming machines of the branch of the art to which this controversy relates have three common characteristics. They are, (1) means for gripping the leaf, (2) means for carrying the leaf when gripped to (3) means for stripping the stem. The usual gripping means is either a pair of gripper bars or a set of mechanical fingers adapted to clamp or grip the leaves. Carriers are either endless belts or reels, which convey the leaf to the stripping mechanism. The stripping means usually consists of a pair of rolls with cutting grooves or a great number of wire bristles extending radially from their peripheral surfaces. These rolls are so arranged that they separate to let the gripper bars through, and then close upon the gripped tobacco leaf as it passes between them, and cut, rag, or tear the membrane from the stem.

Hutcheson does not claim for his invention any element or characteristic not commonly found in such machines of the prior art, (excepting, perhaps, a feed control attachment, presently to be mentioned). He maintains, in substance, that he has invented a certain new and valuable adjustment of the old elements of carriers and rolls, and for this invention makes claim in his patent, as follows:

"4. In a tobacco-stripping machine, a pair of coacting leaf stripping rolls, means for intermittently moving both of said rolls asunder in relatively opposite directions, and a pair of coacting drawing-in bars moving in a rectilinear path; the aforesaid parts being constructed and arranged so that a leaf on being grasped between said drawing-in bars is thereby carried between the said stripping-rolls to be subjected to the action thereof and the stem transported away from said rolls, substantially as described."

If there is invention in this claim, it resides in what the plaintiff characterized at the argument as the "Hutcheson main thought." This is the movement of the drawing-in or gripper bars "in a rectilinear path" and the movement of the rolls "asunder in relatively

opposite directions" to permit the bars to pass between them. This manifestly is the essence of the patent, and, aside from the particular means employed to put it into practice, is the whole of Hutcheson's thought.

The questions in this controversy, therefore, are—Whether the thought credited to Hutcheson was in fact his; and, if so, whether the thought, as developed by the means he employed, involved patentable novelty in view of prior patents to Cochrane, No. 538,660, and to Guerrant, No. 630,334 in the tobacco stemming art, and of the patent to Peterson & Clark, No. 426,603 in an art claimed to be analogous.

The idea of the separation of rolls to permit the passage of gripper bars or fingers, is old, and is not claimed by Hutcheson. The idea of moving *both* rolls "asunder in relatively opposite directions" though claimed by Hutcheson as a part of his conception, is manifestly not his at all, for Guerrant had that conception and had reduced it to practice three years before Hutcheson.

Though Guerrant's means for separating both rolls was barred to Hutcheson, Guerrant's conception of their separation, being merely a function, was not barred to him. Therefore, Hutcheson was free to embody it in any novel means of his own. This he proceeded to do. What was the means he employed in doing it?

Hutcheson took the old upper and lower endless belts or chains of tobacco steming machines, with their transverse gripper bars arranged to close together and grip the waiting tobacco leaf at a predetermined point and time and mounted cams upon both sets of belts. In operation the cams on the upper belt move under the upper roll and the cams on the lower belt move above the lower roll. The rolls are seated in what in effect are vertical guides supported by springs. As both sets of belts move the cams of the upper belt press the upper roll upward and the cams of the lower belt press the lower roll downward, thus separating them at a time and to an extent which permits the passage of the gripper bars between them. As the cams pass beyond points of contact with the rolls, the springs press the rolls back to their normal positions in contact with the moving leaf. The following diagram shows in outline the principle and the means of the patent:

Fig. 7.

Chain

Clamping bars

Movable stemming roll

Movable stemming roll

Chain

While the conception of a simultaneous separation of stripping rolls was Guerrant's, Hutcheson claims that the means for carrying that conception into practice in the way shown by his patent, is his. If it is, he is doubtless entitled to a patent for it. But we are very clear that the means in which he claims invention and for which alone he may claim a patent, is not his. In developing Guerrant's idea, Hutcheson evidently went to the art and there he found Cochrane. Cochrane had the same upper and lower endless belts with transverse gripper bars and the same stripping rolls. Cochrane separated the rolls to permit the passage of the gripper bars between them, but he effected separation not by moving both rolls, but by holding the lower roll stationary and moving the upper roll away from it. The upper roll was set in vertical guides supported by springs, and was moved up as the cams of the upper endless belt came under it and was forced back by the springs as the cams passed on. The following diagram shows in outline the principle and means of Cochrane:

Fig. 2.

Clamping bars
Movable stripping roller
Chains
Stationary roller

In prosecuting his application through the Patent Office, Hutcheson very naturally encountered Cochrane. Beginning with claims which did not limit the invention to a separation of *both* rolls, and having them rejected on reference to Cochrane, claims 3 and 4 were finally allowed with such a limitation.

We are thus brought to the question, whether Hutcheson's practice of Guerrant's conception of moving *both* rolls by the same means employed by Cochrane in moving *one* roll, involves the inventive faculty and amounts to patentable novelty. If there was merit in Guerrant's conception of the separation of both rolls, Cochrane made perfectly obvious the means by which such separation could be effected. Hutcheson did in both rolls essentially and almost precisely what Cochrane did in one, with little deviation of means and none of function. We are clearly of the view that in carrying out Guerrant's conception by Cochrane's means, Hutcheson invented nothing,—unless he thereby conceived and achieved something beyond the scope of Cochrane's invention.

Hutcheson claims that his invention meets this test, and that in doing in two rolls what Cochrane did in one, he did something that Cochrane neither thought of nor did. This comprises the other element of Hutcheson's main thought, namely, the movement of the gripper bars

with the tobacco leaf in their grasp "in a rectilinear path." This he claims is a novel and useful thing which solved a problem and made an advance in the art meriting a patent. He bases this claim upon two facts: First, that the path of the gripper bars and the tobacco leaf in Guerrant, while substantially rectilinear, is in fact orbital, the arc of the path being wide or narrow according to the diameter of the reel; and, second, that a true rectilinear path in Cochrane is prevented by the stationary roll which causes the lower gripper bars to climb up and ride over it. It is not clear from the evidence that the slightly arcial path of Guerrant, or the rise in the path of Cochrane, presented difficulties involving problems from which the art called for relief. Indeed, it does not appear that Hutcheson's claim of an advance made by a path geometrically rectilinear, was recognized by the art as a matter of importance. Unless Hutcheson, in adopting Cochrane's roll-separating means has solved some real problem or has contributed some new and useful thing to the art, he has not made an advance which entitles him to a patent.

After a very careful study of the record, we are satisfied that whatever merit may be contained in Hutcheson's idea of a true rectilinear path, it does not involve invention. We are of opinion, therefore, that claims 3 and 4 of the patent are invalid. We base our judgment of their invalidity not upon the ground of anticipation, but because we think that they involve no patentable novelty in view of the prior art.

We reach this conclusion upon the prior patents of this art alone, as we find it unnecessary to go to the analogous art cited, in which is the prior patent to Peterson & Clark, No. 426,603, where there is a separation of both rolls and a movement in a true rectilinear path in the precise principle and by almost the identical means of the patent in suit.

Claim 8 is for a controlling device used in connection with the tobacco-stripping machine of the type of the patent in suit. It is as follows:

"In a tobacco-stripping machine, a pair of coacting leaf-stripping rolls, means for intermittently separating said rolls, a pair of coacting drawing-in bars moving in a rectilinear path and passing between said rolls when said rolls are separated, and a controlling device governed by said bars for intermittently arresting the movement of the leaves in position to be grasped by said bars, substantially as described."

We are of opinion that this claim also is invalid for lack of patentable novelty, especially in view of Letters Patent, No. 591,436 to Underwood, in this art. The device appears to us to be nothing more than an expedient commonly resorted to in this and in other arts where feed control is desired.

It is ordered that that part of the decree below, which is here on appeal, be affirmed.