**GALION IRON WORKS & MFG. CO. v. BECKWITH MACHINERY CO.**

No. 3231.

District Court, W. D. Pennsylvania.

June 13, 1938.

Thorp, Bostwick, Reed & Armstrong, of Pittsburgh, Pa., for plaintiff.

Brown, Critchlow & Flick, of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is a patent-suit involving a charge of infringement by defendant of plaintiff's Patent No. 2,020,271 issued on November 5, 1935, to Roy J. Winsor, on an application filed April 7, 1923, and duly assigned to plaintiff. Claims 11, 13, 14, 15, 16, 19, 20, 21, 22, 24, 26, 28, 29, 30 and 31 are in suit. These claims were all added to the patent application in the year 1935 shortly before the patent issued.

The patent relates to road-working machines and its objects were stated by the patentee in his application as follows:

"My present invention relates to a novel and improved road-working implement which may be assembled by bringing together a power-traction unit of an ordinary standard type of tractor comprising a body carrying a motor, suitable transmission and driving axle to which traction means are connected, and a suitable framework provided with steerable wheels and a road working implement, such framework being connected to such power traction element in a manner to constrain rotation of the power-traction element with respect to the frame about a horizontal axis.

"In carrying out my invention I am enabled to utilize any of the well known types of tractors, 'Fordson' tractors, 'Cletrace', Holt or 'Caterpillar' tractors, or the like, which are built in quantity production and are adapted originally as pulling vehicles and stationary power plants. By means of my invention I provide suitable attachments to apply to such tractors, to convert them into relatively lengthened

vehicles, with the original power traction units as pushing elements, and with steering or guide wheels sufficiently spaced from the propelling mechanism so as to carry between the front wheels and the power plant and suspended from the framework, road working implements, such as road grading devices. An important advantage and feature of this construction consists in the fact that a machine is thus provided, utilizing a standard type of power plane and engine and driving construction, together with a very simple and economical attaching frame. Furthermore, an advantageous feature consists in the fact that these attaching frames can be readily shipped and assembled at distant points, in ordinary garages or by usual farm labor.

"In carrying out my invention I can convert a standard type of tractor into an efficient operating machine by providing a framework suitable for speedy attachment, in a merely nominal space of time and without the slightest machine work or the like. Thus in converting a 'Fordson', for example, I provide a set of side frames adapted to be attached directly to the rear axle, which frames extend forwardly and upwardly a sufficient distance to provide length and height to swing the desired road-working implements under the frame, said frame having a pivoted forward truck to which the original tractor wheels can be applied if desired. Thus the operation of converting a tractor into a machine of the type described, consists simply in detaching the front wheels, attaching the same to the forward truck of the framework, and clamping, bolting or otherwise securing the rear ends of the side frames about the rear axles of the tractor driving mechanism—a matter of but a few moments and capable of consummation without skilled labor, independent of machine shops, boring, fitting, or other expert operation. Thus a pulling tractor is almost instantly converted into a road machine, wherein the power plant becomes the pushing element for the completed converted machine."

We may cite claim 31 as a typical claim:
"31. In a power operated road machine, the combination with a relatively long vehicle frame comprising spaced-apart elongated symmetrically arranged side members, of a power traction unit at one end portion of said frame and comprising an engine connected by power transmission mechanism to ground engaging devices, a steering wheel unit at the other end portion of said frame, a road working implement adjustably mounted on said frame in position to operate on material along the path of travel of the machine, mechanism between the said spaced-apart side members and the forward central portion of said power traction unit to hold the latter in fixed relation to said frame independently of said steering wheel unit, the power traction unit being otherwise supported solely by said ground engaging traction devices, spaced-apart supporting connections between the said spaced side members and said ground engaging traction devices to afford support of said frame solely by said traction devices and said steering wheel unit and provide connections at three spaced points between the frame and the power traction unit, an operator's station, and means operable from said operator's station for adjusting the working implement and actuating said steering wheel unit during movement of the machine along the roadway by means of said traction unit."

The defenses are non-infringement and lack of novelty.

As we start to consider this patent, we note all the claims sued upon were added by amendment long after the application for the patent was filed. The filing date of the application was April 7, 1923. Claims 11, 13, 14, 15, 16, 19, 20, 21, 22, 24, 27 and 28 were added by amendment on July 20, 1935. Claims 29, 30 and 31 were added by amendment on September 20, 1935. If, in the meantime, other inventors have entered the same field, we have a case of possible intervening rights which cannot be appropriated by a patentee merely by amending his claims.

The applicable law on this phase of the case is well stated by Mr. Justice Bradley in Chicago & N. W. R. Co. v. Sayles, 97 U. S. 554, 563, 24 L.Ed. 1053, as follows:

"The law does not permit such enlargements of an original specification, which would interfere with other inventors who have entered the field in the mean time, any more than it does in the case of re-issues of patents previously granted. Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other

inventions made prior to such alteration, or to appropriate that which has, in the mean time, gone into public use."

The principle here announced has been followed by the Circuit Court of Appeals of this Circuit in Hestonville, M. & F. Pass. Ry. Co. v. McDuffee, 185 F. 798, 802.

 This leads us to the conclusion that the claims of the patent in suit must be strictly construed and read in the light of the disclosure of the invention as contained in the descriptive portion of the patent; and that we cannot conclude that just because an alleged infringing device comes literally within the terms of a patent-claim, there is infringement. General Electric Co. v. Allis-Chalmers Co., 3 Cir., 178 F. 273, 276; Standard Tobacco Stemmer Co. v. Tobacco Stemming Machine Co., D.C., 237 F. 822, 827, affirmed 3 Cir., 247 F. 112; Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 568, 18 S.Ct. 707, 42 L.Ed. 1136; Elevator Supplies Co., Inc., v. Graham & Norton Co., 3 Cir., 44 F.2d 354, 355, 357.

As we read the patent-drawings and specifications of the patent in suit, it appears to be perfectly plain the invention rests in the means for coupling any of the well-known tractors, such as the "Fordson," the "Cletrace," and the Holt or "Caterpillar" with an ordinary road-working machine, and thus supplying the motive power to operate the road machine, and still have the tractor to use for other purposes when it is not utilized for propelling a road-machine. There is no such provision for the use of the power-unit of the defendant's structure in that way. It is first and last a road-working machine, with no provisions whatever for removing the power-unit and utilizing it as a tractor.

The only conclusion we can reach from reading the drawings and specifications of the Winsor patent, is that one must use a standard commercial tractor in such a way that it may not only be readily attached to a road-working machine, but also as readily detached therefrom and restored to its original uses. The defendant's device has no such provision. True, it has a motor-equipment, but that is built permanently into the road-machine. There is no contention that it can readily be attached to the machine and as readily detached therefrom, and then utilized as a tractor.

In a similar situation involving a patent covering a special frame structure for attaching existing types of tractors to industrial trucks, and also a patent for attaching such a tractor to harvesting machines, the Circuit Court of Appeals of the Seventh Circuit, in Myers v. Austin-Western Road Machinery Co., 45 F.2d 751, held those patents were not infringed by a road-grading machine which used a tractor's motor-equipment permanently built into the grader, because there was no provision for readily attaching the tractor equipment to the grader, and also for the detachment of the same and restoring the tractor to its original uses.

That essential element of the claims of the plaintiff's patent is totally lacking in defendant's structure.

This view makes it unnecessary to pass on the validity of the plaintiff's patent, except possibly we should say that no novelty can be claimed in the use of a motor to operate a road-machine. The machine shown and described in Oswald Patent No. 1,431,594, was in public use and sold more than two years prior to the filing of the application. Appropriate findings of fact and conclusions of law in accordance with this opinion are filed herewith. A decree for dismissal of plaintiff's bill may be submitted.