**GALION IRON WORKS & MFG. CO. v. J. D. ADAMS MFG. CO.**

No. 6739.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1939.

Rehearing Denied Sept. 18, 1939.

---

Verne A. Trask, of Indianapolis, Ind., and Wallace R. Lane, of Chicago, Ill., for appellant.

George I. Haight and Edgar F. Beaubien, both of Chicago, Ill., and Charles M. Nissen, of Columbus, Ohio, for appellee.

· Before EVANS, SPARKS, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellee instituted this action in equity to enforce a patent license contract. It was dated April 29, 1936, and was effectual as of February 5, 1936. The parts of the contract which are material are set forth in the margin.[1] The license was granted

---

[1] "2. The Licensee agrees to pay to the Licensor royalties as follows:

"(A) $25.00 per motor grader for all graders manufactured or sold subsequent to the fifth day of February, 1936, embodying one or more claims of United States Letters Patent No. 2,020,271 until either one or more claims of said Winsor patent No. 2,020,271 have been held valid by a court of competent jurisdiction in a decision on the merits and of such scope as to cover the power graders now being made by Licensee and Caterpillar Tractor Company, or until Caterpillar· Tractor Company, a corporation organized and existing under the laws of the State of California and engaged among other things in the manufacture and sale of power graders for road work, accepts a license from the Licensor under the aforesaid United States Letters Patent No. 2,020,271, or has been enjoined from man-

by appellee to appellant under six patents, including the Winsor Patent No. 2,020,-271, and the contract obligated appellant to pay royalties only upon machines embodying one or more claims of this Winsor patent. This patent, at least by name, related to a road-working machine. The device involved is commonly known as a motor or power grader, and is used in the construction and maintenance of all types of roads. Generally, the machine is a motor-driven, elongated, wheeled vehicle having a scraper-blade between the forward and rear wheels to cut, shape, grade, and retread the road surface and shoulders, and to cut and maintain ditches. The answer, among other things, denied the manufacture and sale, and the threatened manufacture and sale, of any motor graders embodying any invention embraced in the Winsor patent without reporting such sales to appellee and paying the royalties thereon. It further alleged a full performance on its part of the duty and obligation placed upon it by the license agreement. The court made special findings of facts and rendered its conclusions of law thereon, and adjudged that appellant had violated the license contract by manufacturing and selling machines embodying the invention of the Winsor patent without paying royalties thereon, and it enjoined appellant from further violation of the license, and ordered an accounting of royalties due appellee. The court further concluded and decreed that the Winsor patent No. 2,020,-271 was good and valid in law as to claims 2, 11 to 14, inclusive, 16, 17, and 19 to 31, inclusive.

The patent was issued on November 5, 1935, on an application filed April 7, 1923. The license agreement was never terminated by either party. Before accepting the license here involved, appellant had been manufacturing and selling its models numbered 151 and 301. It had just introduced its models 50 and 51, and was about to introduce its model 20. As soon as the license was executed appellant began paying royalties on models 151 and 301, "without bothering to determine whether or not those two models were actually within the proper legal scope of the Winsor patent." Royalties on the last three models were not due, if at all, until July 1, 1936, and none have been paid. They were not paid, and no report was made to appellee of the sales because appellant was of the opinion that none of the last three models embodied any of the claims of the patent. This contention led to a conference between the parties on October, 1936, without avail, and

---

ufacturing, selling and using motor graders under the Winsor patents or has ceased to manufacture such motor graders, whichever first occurs.

"(B) From and after the happening of any of the above-mentioned events the Licensee agrees to pay the Licensor a royalty of $75.00 per motor grader upon each grader manufactured or sold by the Licensee embodying one or more claims of United States Letters Patent No. 2,-020,271.

\* \* \* \* \* \*

"(D) If the result of a suit brought should be unfavorable to the Winsor patent, either on the question of validity or infringement, no further royalties shall be due from the Licensee until after a reversal of that decision, with respect to those motor graders manufactured by the Licensee substantially of the same design and construction as that involved in the supposed litigation, and within the scope of the claims involved. Should the supposed unfavorable decision be reversed by a court of appellate jurisdiction, all royalties which would have been payable except for the unfavorable decision shall thereupon immediately become due and payable upon notice from the Licensor.

"(E) If the Winsor patent No. 2,020,-271 is held invalid by any final decree or by decree accepted as final by the Licensor or not infringed by the type or types of construction manufactured by the Licensee, then Licensee shall be under no further obligation to pay royalties.

\* \* \* \* \* \*

"6. Licensor agrees to prosecute all substantial claims of infringement of the Winsor patent No. 2,020,271, at its own cost and expense, but it shall not be required to prosecute at one time more than one suit or action under said patent.

"7. The Licensee may terminate this agreement at any time upon giving sixty (60) days' notice in writing to the Licensor of such intention and providing all royalties due and to become due upon the date of actual termination are paid by the Licensee to the Licensor.

"The Licensee shall not be prejudiced after such termination in disputing the validity or infringement of the Winsor patent by reason of having previously accepted a license thereunder.

"8. The Licensor may terminate this agreement without further notice for any deliberate, flagrant, or repeated violation by the Licensee of any of the covenants herein contained."

this action was instituted on March 29, 1937.

. · On June 13, 1938, a month after the decree of the District Court in this case, the United States District Court for the Western District of Pennsylvania, rendered a decree with an opinion, in Galion Iron Works & Manufacturing Company v. Beckwith Machinery Company, 25 F.Supp. 73, in which it was held that claims 1, 13–16, 19–22, 24, 26, and 28–31 of the Winsor patent were not infringed by the Caterpillar structure involved in that case, which is of the same type as appellant's models 151 and 301. On July 11, 1938, appellee advised appellant of the decision in the Beckwith case, and called its attention to the fact that the payment of all royalties should be suspended during the period between such ruling and the reversal thereof.[2]

All royalties were paid on models 151 and 301 up to the time of that decision, and no others have been paid. This action seeks to recover only for royalties on models 50, 51 and 20 from the effective date of the license, and of course under the present circumstances there can be no recovery, if any, beyond the date of the Galion decree.

The question here presented is whether any of appellant's last three models embody one or more claims of the Winsor patent No. 2,020,271.

At the time the license was issued, there had never been an adjudication of the validity or invalidity of any of the claims of the Winsor patent by a court of competent jurisdiction; nor had the Caterpillar Tractor Company accepted a license from appellee under it; nor had that company been enjoined from making, selling or using motor graders under the Winsor patent; nor had it ceased to manufacture such motor graders. It is quite obvious from the facts recited that appellee thought that appellant's models 151 and 301 were covered by the claims of the Winsor patent. It is just as obvious that appellant was convinced of that fact, to such a certainty that it entered into the license agreement without bothering to investigate the matter further, for it will be presumed to have

known the scope of the claims and the specifications. Neither party at that time could be certain as to the validity of the claims. As a matter of precaution, however, they considered the possibility of validity and invalidity, infringement and noninfringement, and guarded against each possibility by fixing the royalty on each machine manufactured by appellant at a comparatively small amount until the validity of any claims involved should be adjudicated, at which time, if held valid, future royalties would be trebled; if held invalid the royalties would cease.

■ It is quite obvious that the contract was voluntarily entered into for the purpose of avoiding litigation between the parties. That of itself was a good consideration, and it was further made abundantly sufficient by appellee agreeing to accept a small royalty in lieu of profits, and the reciprocal promise of appellant to pay the small royalty rather than to incur the possibility of being subjected to the liability for profits. We are convinced that both parties intended that until there was a decision of invalidity or of non-infringement, appellant was bound to pay a royalty of $25 for each structure made and sold by it which embodied any one or more of the claims in suit, regardless of whether such claim or claims was or were, in fact, invalid, or whether, in fact, such structure or structures infringed. It is admitted by appellant that since the decision in the other Galion case, it would have no right to recover the payments of royalties already made upon the models 151 and 301. Likewise, with respect to structures sold under models 50, 51 and 20, prior to that Galion decision, we think appellee is entitled to royalties upon all such structures which are embodiments of one or more of the claims of the patent. This right would be affected in no way by the Galion decision, or by the fact that the royalties had not been paid.

■■ It is conceded that so long as the license remains in force appellant will not be permitted to question the validity of the patent claims (Sinko Tool & Manufactur-

[2] "* * * in the event of a decision unfavorable to the Winsor patent on the question of validity or infringement, the payment of royalties provided for in the agreement shall be suspended with respect to those motor graders of substantially the same design and construction as those involved in the supposed litigation and within the scope of the claims involved therein, and that such suspension shall continue until a reversal of the supposed unfavorable decision. This shall apply to all motor graders which have been manufactured or sold by the J. D. Adams Mfg. Co. during the period between the adverse decision and the reversal thereof."

ing Co. v. Casco Products Corp., 7 Cir., 89 F.2d 916), nor has it done so by this action. It merely contends that its models 50, 51 and 20 are not embodiments of any one or more of the claims. This we think is within appellant's rights.

It is true that the contract provides that "The Licensee shall not be prejudiced after such termination in disputing the validity or infringement of the Winsor patent by reason of having previously accepted the license thereunder," but this we think may not be construed to mean that appellant may not test infringement until the license is terminated. The contract places no restrictions upon the licensee to test the scope of the claims, and the mere use of this language just quoted would not be sufficient to constitute an implied limitation. We know of no legal principle that would prevent such a test, unless the licensee had estopped itself by its conduct.

 Appellee, however, contends that appellant has estopped itself to deny infringement in this case, by its conduct in paying royalties on models 151 and 301, because, as it states, models 150 and 301 are not materially different from the three models in issue. We cannot sustain this contention. The question before us is not whether the structures here involved, upon which no royalties have been paid, are or are not substantially different from those upon which royalties have been paid, but rather are the structures here involved embodiments of any one or more of the claims. Moreover, the record here does not disclose cognizable injury to appellee by the prosecution of this action. The contract does not require appellant to manufacture and sell any of the models, and it gives both parties the right to terminate the license. Under these circumstances we think the only loss to appellee would be the loss of royalties occasioned by the termination of the contract, and this could not be the basis for estoppel against appellant from determining the scope of the claims. The facts in these respects are quite different from those in Miami Cycle & Mfg. Co. v. Robinson, 6 Cir., 245 F. 556, and kindred cases, and we think they are not applicable here.

[█, 10] However, it is obvious that one or more of the claims involved reads literally upon each of the models here in question. Appellant seeks to parry the force of this situation by having the court limit the claims by the language of the specification to a means for coupling a tractor in a road grader in such a manner that the tractor may be detached from the grader and restored to its original uses. If this contention is sound, the next contention is that the claims as thus limited do not read upon appellant's structures, because they are unitary in character, and the tractors used therein may not be detached from the grader and used as a truck. We do not question the court's power to interpret ambiguous language of claims, but we do not understand that the court has the power by judicial decree to limit any claim that is not ambiguous, merely because there is an inconsistency between it and the specification. Here the claims in plain and unambiguous language cover many different kinds of structures, including models 50, 51 and 20. If the claims are so broad that they cover the prior art, they are invalid, and the court in such case should not attempt to limit them in order to save them. That question, as before stated, is not in issue and we cannot approve the District Court's findings that they are valid.

In the Galion case, supra, no license was involved and the court was at liberty to hold either that the claims were invalid or that they were not infringed. It concluded that it was unnecessary to pass on the validity of the claims, and concluded to limit them to what it regarded as a precise disclosure of the specifications. It then found there was no infringement and cited our ruling in the case Myers v. Austin-Western Road Machinery Company, 7 Cir., 45 F.2d 751. We express no opinion here as to the claims thus limited. We merely hold that the claims as they stand are infringed by each of appellant's structures here in issue, citing claim 16 as typical.[3] We are unable to agree with

---

[3] "16. The combination with power traction machanism (sic) comprising a rear axle housing and ground engaging traction devices operatively connected through said housing to an internal combustion engine, of a frame mounted on said traction devices and extending forwardly in advance thereof, a steering wheel unit at the front portion of said extended frame, a road working implement connected to said frame and adapted to work at the rear of said steering wheel unit, a supporting connection between said internal combustion engine and said

948

the conclusion of the court for the Western District of Pennsylvania in the Galion case as to the power of either the court or the patentee to limit an unambiguous claim by the specification.

██ Furthermore, we indicate no opinion as to whether any of the claims are too broad. Such a holding would render the claims invalid and that issue is not before us. We merely hold that the claims as they stand are unambiguous and that they cover the accused devices. We affirm the decree of the District Court in all the issues except on the question of validity. As to that issue the decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

frame, means for controlling said road working implement, and means for operating said steering wheel unit both during the operation of said power traction mechanism."